**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CHICAGO TRIBUNE COMPANY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> PERPLEXITY AI, INC., <br><br> Defendant. | Case No. 1:25-cv-10094-LAP |
| THE NEW YORK TIMES COMPANY, WIRECUTTER, INC., and THE ATHLETIC MEDIA COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> PERPLEXITY AI, INC., <br><br> Defendant. | Case No. 1:25-cv-10106-LAP |

**CONSOLIDATED MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT'S MOTIONS**
**TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINTS**

TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ........................................................................................................ 3

      A.    Perplexity's Innovative Answer Engine ................................................. 3

      B.    Plaintiffs' Claims .................................................................................. 6

III.  LEGAL STANDARD................................................................................................. 8

IV.   ARGUMENT............................................................................................................. 9

      A.    Plaintiffs Do Not Plausibly Allege Direct Copyright Infringement By
            Perplexity For Answer Engine Outputs. ............................................... 9

      B.    Plaintiffs Fail To Allege Any Facts Under Count II For Virtually All
            Registered Copyrights............................................................................ 13

      C.    Plaintiffs Do Not Plausibly Allege Contributory Infringement............ 15

      D.    Plaintiffs Do Not Plausibly Allege Vicarious Liability. ...................... 20

      E.    The Times Plaintiffs Fail to Allege Viable Trademark Claims. ........... 23

            1.    The Times Plaintiffs Fail to State Viable Trademark Claims as to
                  the New York Times Marks.................................................... 24

            2.    The Times Plaintiffs Fail to State Viable Claims that the
                  WIRECUTTER and THE ATHLETIC Marks Are Famous.............. 30

V.    CONCLUSION.......................................................................................................... 33

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Abbey House Media, Inc. v. Apple Inc.*,
  66 F. Supp. 3d 413 (S.D.N.Y. 2014).......................................................................................18

*Abdin v. CBS Broad., Inc.*,
  971 F.3d 57 (2d Cir. 2020)................................................................................................9, 14

*ABKCO Music, Inc. v. Sagan*,
  50 F.4th 309 (2d Cir. 2022) ..............................................................................................9, 10

*Adams v. Warner Bros. Pictures Network*,
  2005 WL 3113425 (E.D.N.Y. Nov. 22, 2005).........................................................................13

*Advance Loc. Media LLC v. Cohere Inc.*,
  2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025)............................................................19, 27, 28

*Arista Recs. LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011)..........................................................................16, 17, 18

*Arista Recs. LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009).....................................................................................19

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................8, 24, 25

*Bus. Casual Holdings, LLC v. YouTube LLC*,
  2022 WL 837596 (S.D.N.Y. Mar. 21, 2022) .........................................................................12

*Bus. Casual Holdings, LLC v. YouTube LLC*,
  2023 WL 6842449 (2d Cir. Oct. 17, 2023).............................................................................20

*BWP Media USA Inc. v. Polyvore, Inc.*,
  922 F.3d 42 (2d Cir. 2019) ...................................................................................................10

*Cartoon Network LP, LLP v. CSC Holdings, Inc.*,
  536 F.3d 121 (2d Cir. 2008).......................................................................................... *passim*

*CDC Newburgh Inc. v. STM Bags, LLC*,
  692 F. Supp. 3d 205 (S.D.N.Y. 2023).....................................................................................32

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020).....................................................................................27

*Chavez v. British Broadcasting Corp.*,
  2019 WL 2250446 (S.D.N.Y. May 23, 2019) ........................................................................27

*CoStar Grp., Inc. v. LoopNet, Inc.*,
  373 F.3d 544 (4th Cir. 2004) .................................................................................................9

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
  607 U.S. ___, 146 S. Ct. 959 (2026)................................................................................ *passim*

*DigitAlb, Sh.a v. Setplex, LLC*,
  284 F. Supp. 3d 547 (S.D.N.Y. 2018).................................................................................32

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  844 F.3d 79 (2d Cir. 2016)....................................................................................................9

*Evans v. NBCUniversal Media, LLC*,
  2021 WL 4513624 (C.D. Cal. July 23, 2021)......................................................................13

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991)..........................................................................................................1, 18

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*,
  586 U.S. 296 (2019)..............................................................................................................14

*Francis v. Kings Park Manor, Inc.*,
  992 F.3d 67 (2d Cir. 2021) (en banc)....................................................................................8

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*,
  443 F.2d 1159 (2d Cir. 1971)..............................................................................................16

*Hartmann v. Google LLC*,
  2022 WL 684137 (S.D.N.Y. Mar. 8, 2022) .........................................................................21

*Hines v. Roc-A-Fella Recs., LLC*,
  2020 WL 1888832 (S.D.N.Y. Apr. 16, 2020).......................................................................13

*Hunley v. Instagram, LLC*,
  73 F.4th 1060 (9th Cir. 2023) ...............................................................................................9

*In re OpenAI, Inc. Copyright Infringement Litig.*,
  2025 WL 3635559 (S.D.N.Y. Dec. 15, 2025) ......................................................................33

*Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*,
  823 F.3d 153 (2d Cir. 2016)..................................................................................................26

*J&J Sports Prods., Inc. v. Espinal*,
  2020 WL 2747981 (E.D.N.Y. May 26, 2020) ......................................................................21

*Kalem Co. v. Harper Bros.*,
   222 U.S. 55 (1911)............................................................................................17

*Larball Publ'g Co., Inc. v. Lipa*,
   2023 WL 5050951 (S.D.N.Y. Aug. 8, 2023)................................................14, 15

*Long v. Dorset*,
   854 F. App'x 861 (9th Cir. 2021) ......................................................................10

*Lopez v. Bonanza.com, Inc.*,
   2019 WL 5199431 (S.D.N.Y. Sept. 30, 2019)......................................................9

*Luv N'Care, Ltd. v. Regent Baby Products Corp.*,
   841 F. Supp. 2d 753 (S.D.N.Y. 2012)................................................................32

*McGucken v. Newsweek LLC*,
   464 F. Supp. 3d 594 (S.D.N.Y. 2020)................................................................22

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005)..................................................................16, 17, 18, 19

*Music Force, LLC v. Sony Music Holdings Inc.*,
   2020 WL 5733258 (C.D. Cal. Aug. 12, 2020)....................................................20

*New York Times Co. v. Microsoft Corp.*,
    777 F. Supp. 3d 283 (S.D.N.Y. 2025)................................................................16

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ............................................................................10

*Piuggi v. Good for You Prods. LLC*,
   739 F. Supp. 3d 143 (S.D.N.Y. 2024)............................................................13, 14

*Schutte Bagclosures Inc. v. Kwik Lok Corp.*,
   193 F. Supp. 3d 245 (S.D.N.Y. 2016)................................................................32

*Shull v. TBTF Prods. Inc.*,
   2019 WL 5287923 (S.D.N.Y. Oct. 4, 2019)........................................................14

*Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*,
   118 F.3d 955 (2d Cir. 1997)..............................................................................20

*Sony Corp of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984)..........................................................................................16

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
   93 F.4th 222 (4th Cir. 2024), *reversed and remanded*, 146 S. Ct. 959 (2026)............17, 20, 22

iv

*Spool v. World Child Int'l Adoption Agency*,
     520 F.3d 178 (2d Cir. 2008)..................................................................................8

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
     588 F.3d 97 (2d Cir. 2009)..................................................................................30

*Stevens v. Tomlin*,
     2023 WL 5486247 (E.D.N.Y. Aug. 24, 2023).....................................................15

*Stross v. Twitter, Inc.*,
     2022 WL 1843142 (C.D. Cal. Feb. 28, 2022)......................................................10

*Subversive Tools, Inc. v. Bootstrap Farmer LLC*,
     2025 WL 3229122 (S.D.N.Y. Nov. 19, 2025).....................................................32

*Taboola, Inc. v. Ezoic Inc.*,
     2020 WL 3965308 (S.D.N.Y. Feb. 21, 2020)........................................................8

*Tiffany (NJ) Inc. v. eBay Inc.*,
     600 F.3d 93 (2d Cir. 2010)..................................................................................27

*VHT, Inc. v. Zillow Grp., Inc.*,
     918 F.3d 723 (9th Cir. 2019) ................................................................................9

*Walker Wear LLC v. Off-White LLC*,
     624 F. Supp. 3d 424 (S.D.N.Y. 2022)................................................................32

*Weight Watchers Int'l, Inc. v. Noom, Inc.*,
     403 F. Supp. 3d 361 (S.D.N.Y. 2019)................................................................27

*White v. DistroKid*,
     738 F. Supp. 3d 387 (S.D.N.Y. 2024)..........................................................20, 22

*White v. DistroKid, LLC*,
     766 F. Supp. 3d 451 (S.D.N.Y. 2025)..................................................................9

*Wolk v. Kodak Imaging Network, Inc.*,
     840 F. Supp. 2d 724 (S.D.N.Y. 2012), *aff'd sub nom. Wolk v.*
     *Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014).......................................12

**STATUTES**

15 U.S.C.
     § 1114(1)..........................................................................................................23, 28
     § 1125(a) ...........................................................................................................23, 30
     § 1125(c) ...............................................................................................23, 28, 30, 31

17 U.S.C. § 411(a) .................................................................................................14

**TREATISES**

4 Nimmer on Copyright § 13D.06 ...............................................................................14

McCarthy on Trademarks and Unfair Competition § 24:105 (5th ed.) ...................................32, 33

## I.    INTRODUCTION

> "The most fundamental axiom of copyright law is that no author
> may copyright his ideas or the facts he narrates."
>
> *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344-45
> (1991).[1]

The New York Times and Chicago Tribune seek to disrupt Perplexity's groundbreaking generative AI technology, which provides the public with efficient access to ideas and facts that no one owns.  That technology—the "answer engine"—connects large language models ("LLMs") to the vast ocean of human knowledge and information dispersed across the internet, of which— according to the First Amended Complaints ("FACs")[2]—Times and Tribune content is a minuscule part.  When a user enters into the answer engine a query such as "How many bedrooms are in the White House?", it searches for, acquires, and synthesizes information from a wide range of sources.  On a full record, Plaintiffs' attempts to stop this novel technology by monopolizing facts will founder on bedrock principles of intellectual property law that have consistently permitted innovative technologies like Perplexity to exist.

Perplexity's Motions, however, focus on claims that cannot even progress past the pleading stage.  The FACs fail to state a claim that Perplexity is directly liable (Count II) or secondarily liable (Count III) for copyright infringement based on allegedly infringing answers automatically generated in response to user questions.  And Counts IV and V of the Times FAC fail to state any viable trademark claims.

As to Count II, Perplexity cannot be directly liable because the Complaints lack any allegations of volitional conduct by Perplexity.[3]  Direct liability for copyright infringement

---

[1] Unless otherwise noted, all emphasis added and internal citations are omitted.

[2] References herein to the FACs are in the form "Tribune ¶ __" and "Times ¶ __."

[3] This argument was not before Judge Stein in the OpenAI case.

requires proof of a volitional act by the defendant.  Plaintiffs allege that, when a Perplexity user asks the answer engine to specifically obtain information from Plaintiffs (e.g., "[p]lease provide a detailed summary of this article"), Perplexity is ***directly*** liable for the resulting "verbatim" or "near-verbatim" copies of Plaintiffs' works available on the internet.  *E.g.*, No. 25-cv-10094-LAP, Dkt. 37 ("Tribune") ¶ 105; No. 25-cv-10106-LAP, Dkt. 44 ("Times") ¶ 140.

Binding precedent forecloses this theory.  In *Cartoon Network LP, LLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ("*Cablevision*"), the Second Circuit held it is the end user—*not* the provider of automated technology—who engages in volitional conduct when selecting copyrighted content for copying using that technology.  *Id.* at 132.  That is true even where the provider determines the universe of materials available for copying and the technology is specifically designed to enable such copying.  *Id.* at 132-33.  Plaintiffs' allegations are even more remote.  Plaintiffs do not—and could not—allege that Perplexity exists only to provide perfect copies of Times or Tribune content.  Moreover, Plaintiffs fail to plead facts alleging infringing outputs for nearly every asserted copyright.  At a minimum, the Count II claims for those works should be dismissed.

Count III, for contributory and vicarious copyright infringement liability, should also be dismissed.  The contributory infringement claims fail as a matter of law under the recently-clarified standard set forth in *Cox Commc'ns, Inc. v. Sony Music Ent.*, 607 U.S. ___, 146 S. Ct. 959 (2026).  Plaintiffs have not plausibly alleged that Perplexity either induced its users to generate infringing outputs or tailored its services for infringement.  Nor do Plaintiffs assert that any third parties are, in fact, using Perplexity's technology this way.  The vicarious liability claims fail because Plaintiffs do not plausibly allege that Perplexity has a direct financial interest in any purported infringement of Plaintiffs' works.

2

Additionally, Counts IV and V of the Times FAC should be dismissed because they lack examples of uses by Perplexity of any trademarks owned by the three Times Plaintiffs to promote Perplexity's products or any uses of those marks that are not nominative fair uses—and it is Plaintiffs' burden to allege such uses. Those counts also rely on asserted trademarks as to which the Times Plaintiffs cite no use whatsoever by Perplexity and on conclusory and insufficient allegations of fame (for dilution purposes) as to the WIRECUTTER and THE ATHLETIC marks.

Trimming the Complaints to remove these deficient Counts will set the boundaries for the disputes on Plaintiffs' remaining claims, including on the core issue of fair use.

## II.    BACKGROUND

### A.    Perplexity's Innovative Answer Engine

Founded in 2022, Perplexity's core product is a novel and groundbreaking AI tool known as the "answer engine." Tribune ¶ 2; Times ¶ 2. "[W]hen [a user] ask[s] Perplexity a question, it uses advanced AI to search the internet in real-time, gathering insights from top-tier sources. It then distills this information into a clear, concise summary … in an easy-to-understand, conversational tone." Tribune ¶ 2; Times ¶ 2. This process involves "interpret[ing] [the user's] question" and "'search[ing] the internet, gathering information from authoritative sources like articles, websites, and journals.'" Tribune ¶ 2; Times ¶ 2. Users rely on Perplexity's answer engine for up-to-date, succinct, factual answers to almost any question. Tribune ¶ 54; Times ¶ 76. Users can ask Perplexity: "How many Vermeer paintings currently exist in the world?" It will provide the requested answer, and links to relevant sources on the internet and suggested related questions.

How many Vermeer paintings currently exist in the world?

Art historians generally agree that there are about 34–35 surviving paintings securely attributed to Johannes Vermeer, with total "known Vermeers" often quoted in the mid-30s. p55 +4

Why the numbers vary

- Many museums and scholars now state that 34 paintings are firmly accepted as by Vermeer. p55 +3

- Some institutions and writers say "about 35" surviving works, reflecting one or two still-debated attributions. essentialvermeer +2

- A few guides and popular accounts still refer to 36–37 "Vermeers," counting paintings that some experts now label "attributed to Vermeer" or possibly by a studio assistant. theartnewspaper +2

Missing or disputed works

- Archival records suggest Vermeer painted fewer than 50 works in total, so several are thought lost or untraced. essentialvermeer +3

- Six or more "missing Vermeers" are known only from documents or from works stolen or destroyed, such as the still-missing "The Concert" taken from the Isabella Stewart Gardner Museum in 1990. vermeerdelft +1

⌕  ⤓  ▢  ⇄  ◖◉  10 sources                                          👍  👎  …

Follow-ups

↳  Which museums hold the most Vermeer paintings

↳  What are Vermeer most famous paintings

↳  Where are Vermeer paintings privately owned

↳  Why are there so few surviving Vermeer works

↳  What are the three dated Vermeer paintings

As alleged, Perplexity's answer engine uses AI technology to cull facts in real time from numerous sources using retrieval-augmented generation ("RAG"). Tribune ¶¶ 4, 41-50; Times

4

¶¶ 4, 65-72.  It then condenses and summarizes those facts using an LLM, which automatically generates an easy-to-understand, natural-language response, incorporating facts gathered from the internet.  Tribune ¶ 41; Times ¶ 63.  Users are free to click through and read the underlying sources, which are presented as links embedded in the response.  Tribune ¶ 63; Times ¶ 86.  Perplexity's answer engine is *not* designed to simply regurgitate or reproduce verbatim expressive content from any given source; Plaintiffs do not suggest otherwise.  *E.g.*, Tribune ¶ 4; Times ¶ 4 (alleging only that "Perplexity ... repackages the original content in written responses to users").

These processes are fully automated.  Plaintiffs allege that the "LLMs ... upon which Perplexity's AI products are built" can "generate answers to questions about information that is included in their training data" and are "capable of taking documents as input, then summarizing or answering questions about those documents" because they "use algorithms to weigh the relevance of different parts of the [users'] input data."  Tribune ¶¶ 38-39; Times ¶¶ 60-61.  "The quality of the output depends on the size of the model, the diversity of training data, and the specific architecture and training techniques used," not any post-query intervention.  Tribune ¶ 39; Times ¶ 61.

Once trained, "LLMs may also be deployed in conjunction with a technique called [RAG]," which involves connecting an LLM to external sources of information, such as live search results, to improve the quality of its outputs.  Tribune ¶¶ 41-42; Times ¶¶ 63-64.  Plaintiffs allege Perplexity uses RAG, or "grounding," to answer user prompts.  Tribune ¶¶ 41-42; Times ¶¶ 63-64.  They claim that a user prompt to Perplexity's answer engine starts the following automated process: Perplexity's products (1) "receive an input, such as a prompt"; (2) "retrieve relevant content related to the input prior to generating a response"; (3) "combine the original input with

5

the retrieved documents in order to provide context"; and (4) "provide the combined data to an LLM, which generates a human-like language response."  Tribune ¶ 41; Times ¶ 63.

Plaintiffs never identify any act by any person other than the Perplexity user from the prompt to the ensuing output.  The user presses the button and Perplexity's answer engine automatically executes.  Tribune ¶ 41; Times ¶ 63.

### B.    Plaintiffs' Claims

Plaintiffs are news organizations that publish digital and print products, including the *Chicago Tribune* and *The New York Times* newspapers and websites.  In December 2025, Plaintiffs sued Perplexity for copyright and trademark infringement, bringing the same five Counts in two Complaints: three Counts asserting copyright claims and two Counts asserting trademark claims. Perplexity moved to dismiss two of the three Counts asserting copyright claims in each Complaint, as well as the two Counts asserting trademark claims in the Times Complaint. No. 25-cv-10094-LAP, Dkts. 33-36; No. 25-cv-10106-LAP, Dkts. 40-43.  Rather than oppose, Plaintiffs filed the FACs on March 20, 2026.

The FACs still include three copyright claims.  Count I alleges that Perplexity directly infringes by using copyrighted works as "inputs" for its answer engine, alleging Perplexity "copies" their content "by crawling and scraping" their websites "with its own crawlers like PerplexityBot and Perplexity-User, as well as those of third parties," and through "accessing and using third-party indices and databases comprised of scraped ... content … to populate Perplexity's 'AI-First' search index to power its GenAI Products."  Tribune ¶¶ 52-53, 93-95; Times ¶¶ 74-75, 128-130.  These "input" counts, while disputed by Perplexity, are not the subject of Perplexity's Motions.  Nor are the Tribune's Count IV and Count V claims for trademark violations, which Perplexity also disputes.

Perplexity challenges Count II in both FACs, also for direct copyright infringement. Plaintiffs allege Perplexity directly infringed their copyrights when "outputs or 'answers' to user queries contain and/or are derived from the[ir] copyrighted content." Tribune ¶ 105; Times ¶ 140. These claims rest on answers allegedly containing "verbatim or near-verbatim reproductions" of Plaintiffs' works. Tribune ¶ 105; Times ¶ 140. The FACs contain a handful of such examples, but Plaintiffs do not allege that similar outputs have been generated for the vast majority of the asserted works. For example, the Tribune alleges that the automated reproduction of a *Chicago Tribune* article in response to a user prompt (likely by the Tribune or its attorneys) asking Perplexity's Sonar API "to provide the contents" of a specific *Tribune* article, is direct infringement **by Perplexity**, not the prompter who specifically requested Plaintiff's content. *See* Tribune ¶¶ 66-67, 70-73. The Times similarly alleges the automated reproduction of a *New York Times* article in response to a user prompt (again, likely from the Times or its counsel) asking the Sonar API "to provide the contents" of a specific *Times* article is direct infringement by Perplexity, not the prompter. *See* Times ¶¶ 93-94, 96-102. The FACs allege no intervening volitional act by any human, much less one attributable to Perplexity.

Perplexity also challenges Count III in both FACs, asserting secondary liability for copyright infringement (contributory and vicarious liability). Plaintiffs allege "[i]n the alternative" that Perplexity is "secondarily liable" for infringement allegedly committed by end users when they obtain infringing content from Perplexity. Tribune ¶ 111; Times ¶ 146. These claims also rest on allegations of infringing *outputs*, not inputs.

Plaintiffs further allege Perplexity is contributorily liable under both a "material contribution" theory and an "inducement" theory. Tribune ¶ 111; Times ¶ 146. The former is based on Perplexity's purported knowledge of infringing outputs and Perplexity's failure to

prevent this "ongoing infringement" despite its ability to do so.  Tribune ¶ 113; Times ¶ 148.  The latter is based on the conclusory allegation that Perplexity operates its RAG process "with the object of supplying [Plaintiffs'] content" and that Perplexity "promotes itself as a service providing such content."  Tribune ¶ 114; Times ¶ 149.  Plaintiffs' "material contribution" theory is foreclosed by *Cox* and their "inducement" theory is unsupported by any specific factual allegations.  For the vicarious liability claim, the FACs do not plausibly allege Perplexity receives a direct financial benefit from any user infringement.

Perplexity also challenges The Times Plaintiffs' three Lanham Act-based claims in Counts IV and V, which are deficient for reasons discussed in Section IV.E.  While the Tribune asserts similar Counts IV and V, they are not at issue here.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a plaintiff must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 72 (2d Cir. 2021) (en banc).  This "'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[] ... will not do.'"  *Taboola, Inc. v. Ezoic Inc.*, 2020 WL 3965308, at *6 (S.D.N.Y. Feb. 21, 2020).  While the Court must draw all reasonable inferences in Plaintiffs' favor and accept all nonconclusory allegations of fact, the Court need not credit speculative inferences, bald assertions, or legal conclusions.  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  A plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.    ARGUMENT

### A.    Plaintiffs Do Not Plausibly Allege Direct Copyright Infringement By Perplexity For Answer Engine Outputs.

"To establish a claim of copyright infringement," Plaintiffs must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020). The second prong—copying—requires proof the defendant engaged in "'volitional conduct' that 'causes' the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022); *Hunley v. Instagram, LLC*, 73 F.4th 1060, 1074 (9th Cir. 2023) ("[E]very circuit to address this issue has adopted some version of ... the volitional-conduct requirement."). To adequately allege volitional conduct, "[s]omething more must be shown than mere ownership of [platforms] used by others to make illegal copies." *Lopez v. Bonanza.com*, Inc., 2019 WL 5199431, at *22 (S.D.N.Y. Sept. 30, 2019) (Preska, J.).

The "prerequisite" of volitional conduct "takes on greater importance in cases involving automated systems." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 731 (9th Cir. 2019). Services that automatically make unlawful copies only at a user's request cannot be liable for direct infringement. *Cablevision*, 536 F.3d at 130-33 (no volitional conduct where system automatically adhered to a user's request). Only systems that do the same ***without*** a user request can be held directly liable. *See, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 96 (2d Cir. 2016) (finding volitional conduct where system retrieved copyrighted material ***without*** a specific user request). "[W]here a machine or system automatically undertakes actions that result in the unlawful copying of a copyrighted work, the mere ownership, construction, or supervision of the machine or system will ***not*** establish volitional conduct." *White v. DistroKid, LLC*, 766 F. Supp. 3d 451, 458 (S.D.N.Y. 2025); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004) (direct infringement requires "something more ... than mere ownership of a

9

machine used by others to make illegal copies"); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) ("[I]nfringement … requires copying *by* the defendant, which comprises a requirement that the defendant cause the copying.") (emphasis original).  Simply put, "direct liability attaches only to 'the person who actually presses the button.'"  *ABKCO Music, Inc.*, 50 F.4th at 321-22 (quoting *Cablevision*, 536 F.3d at 131).

To sufficiently allege volitional conduct, "[t]here must be actual infringing conduct with a nexus sufficiently close and *causal* to the illegal copying that one could conclude that the machine owner himself trespassed on the exclusive domain of the copyright owner."  *BWP Media USA Inc. v. Polyvore, Inc.*, 922 F.3d 42, 63 (2d Cir. 2019) (emphasis original) (Newman, J., concurring).  A direct infringement claim fails absent allegations that "the distribution [by defendant] of the copyrighted material did not happen automatically" or that the defendant "instigated any copying, storage, or distribution."  *Long v. Dorset*, 854 F. App'x 861, 863-64 (9th Cir. 2021) (cleaned up) (affirming dismissal of direct infringement claim); *see also Stross v. Twitter, Inc.*, 2022 WL 1843142, at *2-4 (C.D. Cal. Feb. 28, 2022) (dismissing direct infringement claim).

*Cablevision* is on point.  Cablevision aggregated television programming from broadcast and cable channels.  536 F.3d at 124.  It created a complex remote digital video recorder ("DVR") system "requiring numerous computers, processes, networks of cables, and facilities staffed by [Cablevision] personnel" that allowed a customer to record for later viewing programming that was centrally stored at Cablevision facilities.  *Id.* at 125.  Owners of television programming sued Cablevision alleging it was *directly* liable for the copies of their programming made by customers using the DVR system.  *Id.*  The Second Circuit rejected that claim, finding that Cablevision's customers—but not Cablevision—engaged in the relevant volitional conduct.  *Id.* at 133.  Although Cablevision had "unfettered discretion in selecting the programming that it would make available

10

for recording," those acts of selection were not "sufficiently proximate to the copying to displace the customer as the person who 'makes' the copies." *Id.* at 132. Direct liability fell only on the user because the copies were "made automatically upon [a] customer's command." *Id.* at 131.

So, too, here. Plaintiffs bring two counts of direct infringement against Perplexity. Count I in both FACs, which is *not* the subject of Perplexity's Motions, is based on Perplexity's alleged own—i.e., volitional—acts with respect to using Plaintiffs' works as ***inputs*** to develop its answer engine. Count II is more narrowly targeted at the ***outputs*** of alleged copies of Plaintiffs' works automatically generated at users' direction when they press the button in the answer engine, requesting copies of those specific works. Tribune ¶ 105; Times ¶ 140. There is no allegation that Count II involves anything other than an automated response to a user query.

Plaintiffs allege the outputs provided by Perplexity's answer engine infringe because they "often contain full or partial verbatim reproductions" of Plaintiffs' copyrighted articles. Tribune ¶ 59; *see also* Times ¶ 82 (similar). But the alleged verbatim or near-verbatim outputs result directly from specific prompts entered by the user, not volitional conduct by Perplexity. Plaintiffs allege that outputs contain "verbatim reproductions of the[ir] copyrighted articles, particularly when a user asks a question about what the[y] ha[ve] reported." Tribune ¶ 59; Times ¶ 82. The only instances of alleged infringement are outputs generated "***in response to*** users' [in this case, Plaintiffs'] prompts." Tribune ¶ 78; *see also id.* ¶ 76 (same); Times ¶¶ 107, 110 (same).

Plaintiffs never allege any non-automated act by anyone other than the Perplexity user from the prompt to the ensuing output. Users press the button, and Perplexity's answer engine automatically executes. By developing an AI tool that can allegedly automatically fetch and provide specific content in response to user requests based on its pre-configuration and access to materials available on the internet, Perplexity engages in no more volitional conduct than

11

Cablevision did by curating programming available for copying and providing "access to a system that automatically produces copies [of that content] on command." *Cablevision*, 536 F.3d at 132. Such conduct is legally insufficient to state a claim for direct infringement against Perplexity. *Id.*

The examples of allegedly infringing output in the Complaints confirm that Perplexity cannot be directly liable. Plaintiffs describe, and include screenshots of, prompts engineered by Plaintiffs to generate allegedly infringing outputs. Tribune ¶¶ 63-67, 70-76; Times ¶¶ 86-92, 94-102, 105, 107. It is this highly atypical, litigation-driven "user" behavior that is the "proximate cause" of any allegedly infringing outputs, not Perplexity's provision of a general-purpose AI tool. *See, e.g.*, Tribune ¶¶ 63 (response to Tribune's prompt "[p]lease provide the first five paragraphs"), 65 ("Provide quotes from the reporting in detail"), 67 ("provide the contents of [a specific] Chicago Tribune article"), 70-73 (same), 74 ("Please provide a detailed summary of this article"), 76 (query "that includes the title of [a specific Tribune] article"); Times ¶¶ 90 ("What are the first five paragraphs"), 92 (prompt asking for "exact passages"), 94 ("provide the contents of [a specific Times] article"), 96, 98, 100, 102 (same), 105 ("Provide a detailed summary of the entire article"), 107 (query "that includes the title of [a specific Times] article").

Because Perplexity did not ***cause*** the outputs in response to those user prompts, it cannot be directly liable. *E.g.*, *Bus. Casual Holdings, LLC v. YouTube LLC*, 2022 WL 837596, at *3 (S.D.N.Y. Mar. 21, 2022) (distinguishing passive from active action to hold that a plaintiff must allege the platform played "some 'deliberate role' in the alleged infringement"); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (finding no volitional conduct as there was "no dispute that any reproduction, display or transmission of the Plaintiff's images by or through the KODAK Gallery website is an automated process with no human intervention by

12

any employee of the [] Defendants"), *aff'd sub nom. Wolk v. Photobucket.com, Inc.*, 569 F. App'x 51 (2d Cir. 2014).

### B. Plaintiffs Fail To Allege Any Facts Under Count II For Virtually All Registered Copyrights.

"To satisfy the second element" of a direct (or indirect) copyright infringement claim, "a plaintiff must demonstrate that (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's work." *Piuggi v. Good for You Prods. LLC*, 739 F. Supp. 3d 143, 157 (S.D.N.Y. 2024) (cleaned up).  The latter requires pleading "facts regarding how the [works] are substantially similar," which means "identifying with some degree of specificity how Defendant[s'] works are substantially similar to [their] own." *Id.* at 162.

Courts routinely dismiss claims based on conclusory generalizations of infringement instead of on comparisons of the asserted and accused works.  In *Adams v. Warner Bros. Pictures Network*, the plaintiff failed to state a claim by not specifying "'by what acts' the defendant infringed the copyright" and by not "demonstrat[ing] how defendants infringed on his copyright by producing the films [at issue]."  2005 WL 3113425, at *2 (E.D.N.Y. Nov. 22, 2005); *Hines v. Roc-A-Fella Recs., LLC*, 2020 WL 1888832, at *3-4 (S.D.N.Y. Apr. 16, 2020) ("[T]o plead substantial similarity, a plaintiff must specify which aspects of the offending work allegedly infringed Plaintiff's work"; not doing is "fatal" because the plaintiff must "identify[] with some degree of specificity how the defendant's works are substantially similar to her own") (cleaned up).  Similarly, the court in *Evans v. NBCUniversal Media, LLC* dismissed copyright claims because the plaintiff did "not allege any specific details about the parties' works," and offered only "general, conclusory allegations" about the alleged infringement.  2021 WL 4513624, at *5 (C.D. Cal. July 23, 2021).  Where, as here, a plaintiff "alleges infringement of multiple distinct works,"

13

it "must specify exactly which works were infringed and *plead the elements of infringement as to each*." *Larball Publ'g Co., Inc. v. Lipa*, 2023 WL 5050951, at *6 (S.D.N.Y. Aug. 8, 2023).

Plaintiffs did not plead any facts to support a claim of infringement in Perplexity's answer engine outputs for any of the works included in 3,234 of the 3,245 registrations listed in Exhibit A to the Tribune FAC—99.7% of the asserted copyrights—and for all but five of the "millions" of the copyrighted works the Times alleges Perplexity infringed. *See* Tribune Dkt. 37-1;[4] Times ¶ 5; *see also* Times Dkts. 47–54 (dividing the Times's asserted works into 179 separate files, each thousands of pages long). Plaintiffs address only eleven of their asserted works (six Tribune works and five Times works) with any specificity. Tribune ¶¶ 67, 70-73, 76; Times ¶¶ 94-103.[5] As to the others, Plaintiffs do not identify any Perplexity outputs that are allegedly "substantially similar." *Piuggi*, 739 F. Supp. 3d at 162. That flaw is fatal because, to assess whether works are "substantially similar," the Court must **compare** them—which cannot be done without allegations identifying the accused outputs. 4 Nimmer on Copyright § 13D.06 ("[T]he factfinder compares the two works in suit to examine their similarities"); *Abdin*, 971 F.3d at 67-74 (affirming dismissal after comparing works to assess "substantial similarity"); *Shull v. TBTF Prods. Inc.*, 2019 WL 5287923, at *6-10 (S.D.N.Y. Oct. 4, 2019) (similar).

This is no mere technicality about the degree of notice (or lack thereof). Plaintiffs fail to allege, even in an inadequate conclusory manner, that **any** user caused Perplexity's answer engine

---

[4] These 3,234 Tribune registrations include all registrations listed in Exhibit A, *except* for TX0009386276, TX0009202424, TX0006511609, TX0008180683, TX0008667980, and TX0008473142. *See* Tribune ¶¶ 67, 70-73, 76.

[5] Although Plaintiffs appear to assert that Perplexity infringed their copyrighted works for three additional Tribune articles (Tribune ¶¶ 63-65, 74) and six additional Times articles (Times ¶¶ 86, 88, 90, 92, 105, 107), Plaintiffs fail to identify any registered copyright for these works. Under the Copyright Act, Plaintiffs must register these works before suing Perplexity. *See* 17 U.S.C. § 411(a); *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 302 (2019). Thus, no copyright violation has been properly pleaded for these seven articles.

to generate *any* output that infringed any other of the millions of asserted works.  The sum total of Plaintiffs' allegations is that the eleven "examples of verbatim or otherwise substantially similar or substitutive outputs" that they identified (and likely created) "create a reasonable inference that Perplexity is generating massive amounts of such outputs in response to users' prompts, from all or virtually all of [Plaintiffs'] valuable, copyrighted works."  Tribune ¶ 78; *see also* Times ¶ 110 (similar); *compare* Tribune ¶ 78 to ¶¶ 93, 102 (alleging Perplexity "copied as many of the Chicago Tribune's articles and content that it has been able to access … *includ[ing] content covered by the registrations listed at Exhibit A*" as "*inputs*"); *compare also* Times ¶ 110 to ¶¶ 128, 137 (same).

Not so.  That Plaintiffs' counsel, after an undisclosed number of attempts, were purportedly able to elicit fewer than a dozen allegedly substantially similar outputs from the answer engine does not provide a reasonable basis for concluding that ordinary Perplexity users did the same with respect to the millions of other asserted works.  *See Stevens v. Tomlin*, 2023 WL 5486247, at *2 (E.D.N.Y. Aug. 24, 2023) ("[A] plaintiff suing for copyright infringement may not rest on bare-bones allegations that infringement occurred.  Rather, [he] must identify the 'specific original work [that] is the subject of the claim' as well as 'by what acts' the defendant infringed the copyright."); *cf. Larball Publ'g Co.*, 2023 WL 5050951, at *7, 14 (denying motion to dismiss where plaintiffs "set forth facts pertaining to each work's allegedly-infringed components" and "provide[d] side-by-side comparisons of each work's sheet music").

## C.    Plaintiffs Do Not Plausibly Allege Contributory Infringement.

Plaintiffs' contributory infringement claims fail to plausibly allege that Perplexity induced its users to infringe Plaintiffs' works or tailored its services to that alleged infringement.

Just last month, the Supreme Court in *Cox* held that a company is contributorily liable for the infringements by its users "only if it *intended* that the provided service be used for infringement."  146 S. Ct. at 967.  The Court clarified the narrow circumstances under which a

defendant can be held contributorily liable for others' infringement.  It is no longer sufficient to show that someone, "with knowledge of the infringing activity … materially contributes" to infringing conduct, as that standard has been applied in the Second Circuit.  *See Gershwin Publ'g Corp. v. Columbia Artists Mgmt.*, 443 F.2d 1159, 1162 (2d Cir. 1971).  Plaintiffs must show that the defendant "intended that the provided service be used for infringement."  *Cox*, 146 S. Ct. at 967.  The Court recognized only two ways to show the required intent: that the defendant either induced, or provided a service tailored to, the alleged infringement.  *Id.*  Plaintiffs do not (and could not) allege that Perplexity tailored its services to infringement, and they fail to state a plausible claim for "contributory infringement by inducement."  Tribune ¶ 111 (alleging Perplexity is secondarily liable under three theories: "contributory infringement by material contribution, contributory infringement by inducement, and vicarious infringement"); Times ¶ 146 (same).[6]

"A provider induces infringement if it actively encourages infringement through specific acts."  *Cox*, 146 S. Ct. at 967; *see also Arista Recs. LLC v. Lime Group LLC*, 784 F. Supp. 2d 398, 425 (S.D.N.Y. 2011) (an inducement plaintiff "must show that the defendant (1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement.").  In *Cox*, the Court pointed to *Grokster* as a paradigmatic example of inducement:

---

[6] Judge Stein's opinion in *New York Times Co. v. Microsoft Corp.* ("*Microsoft*") rested on the "material contribution" contributory infringement theory that *Cox* now forecloses.  *See Microsoft*, 777 F. Supp. 3d 283, 308 (S.D.N.Y. 2025) (distinguishing *Sony Corp of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), and *MGM*, 545 U.S. at 926 as not "discuss[ing] claims of contributory infringement by material contribution, which plaintiffs allege here").  Because "material contribution" "goes beyond the two forms of liability recognized in *Grokster* and *Sony*," it cannot be the basis for contributory infringement.  *Cox*, 146 S. Ct. at 969; *see also id.* at 969-70, 972 (Sotomayor, J., concurring in the judgment) (acknowledging that "materially contribut[ing] to infringement . . . is rooted in the common-law doctrine of aiding and abetting" and observing that the majority opinion eliminates "the possibility that other common-law theories of such liability, like aiding and abetting, could apply" to contributory infringement claims); *cf. Grokster*, 545 U.S. at 939 n.12 ("[A] court would be unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement.").

defendants "promoted and marketed their software as a tool to infringe copyrights," and "[t]he 'principal object' of their business models 'was use of their software to download copyrighted works.'" *Id.* (quoting *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 926 (2005) ("*MGM*"); *see also Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62-63 (1911) (defendant "not only expected but invoked by advertisement the use of its films" for infringement of copyright).

The Supreme Court held that Cox was not contributorily liable as a matter of law even where the trial record below "viewed in the light most favorable to Sony, showed more than the mere failure to prevent infringement." *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 236-37 (4th Cir. 2024), *reversed and remanded*, 146 S. Ct. 959 (2026).  That record included, *inter alia*, (1) "evidence that Cox knew of specific instances of repeat copyright infringement occurring on its network"; (2) "extensive evidence about Cox's increasingly liberal policies and procedures for responding to reported infringement on its network, which Sony characterized as ensuring that infringement would recur"; and (3) internal Cox emails and chats that could be interpreted as "displaying contempt for laws intended to curb online infringement." *Id*.  The Supreme Court nonetheless concluded that Cox could not be found liable for inducing infringement when the plaintiffs "provided no 'evidence of express promotion, marketing, and intent to promote' infringement."  146 S. Ct. at 968 (quoting *Grokster*, 545 U.S. at 926).  The Court explained that a theory based on "supplying a product with knowledge that the recipient will use it to infringe copyrights" is legally insufficient to establish inducement because it "conflict[s] with this Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id*. at 968-69.

Plaintiffs devote just three sentences to their induced infringement theory.  They amount to a conclusory allegation that Perplexity "intentionally induces … infringing activity" by

17

"design[ing], operat[ing], and maintain[ing] its RAG process with the object of supplying [Plaintiffs'] content" to users and by "promot[ing] itself as a service providing such content"— none of which is supported by plausible factual allegations.  Tribune ¶ 114; Times ¶ 149.  That is legally insufficient.  *Abbey House Media, Inc. v. Apple Inc.*, 66 F. Supp. 3d 413, 421-22 (S.D.N.Y. 2014) (dismissing inducement claim).

As in *Cox*, Plaintiffs fail to allege even one example of Perplexity "express[ly] promoti[ng]" or "marketing" its answer engine for allegedly infringing uses.  *Cox*, 146 S. Ct. at 968.  Plaintiffs allege Perplexity's CEO "emphasized Perplexity's ability to provide users … comprehensive responses based on high-quality news content."  Tribune ¶ 116; Times ¶ 151.  But "comprehensive" does not mean "infringing."   Answer engine responses "based" on the facts contained in news content do not infringe any copyrights.  *Feist*, 499 U.S. at 344-45, 350 ("The most fundamental axiom of copyright law is that 'no author may copyright his ideas or the facts he narrates'" because they "are not original and therefore may not be copyrighted.").  Plaintiffs also allege, moreover, that Perplexity has a "Publishers' Program" and "licensing deals with certain publishers."  Tribune ¶ 87; Times ¶ 122.  Thus, the inference that Perplexity promotes its services to provide allegedly infringing content is not plausible.

Cases finding inducement liability involve extreme behavior by defendants who actively and expressly broadcast the message that their products or services should be used to infringe.  One of the *Grokster* defendants, for example, touted its services as "the best Napster alternative" *after* Napster was successfully sued for facilitation of copyright infringement.  *Grokster*, 545 U.S. at 925.  And in *Arista Recs. LLC v. Lime Grp. LLC*, the court found inducement where LimeWire ran advertisements that "promoted LimeWire with direct references to other infringement-fostering programs" like Napster and Kazaa.  784 F. Supp. 2d 398, 427-28 (S.D.N.Y. 2011); *see*

18

*also Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132-33, 152-53 (S.D.N.Y. 2009). Plaintiffs do not plead similarly overt exhortations here.

Nor are there any plausible allegations of Perplexity "actively" encouraging infringement "through specific acts." *Cox*, 146 S. Ct. at 967 (citing *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). Plaintiffs allege only that Perplexity outputs are "designed to eliminate the need for its users to visit the original content creators' websites." Tribune ¶ 106; Times ¶ 141. Even if true, and ignoring Plaintiffs' allegations about the Publishers' Program, Plaintiffs fail to allege Perplexity actively encouraged its users to prompt the Answer Engine for the ***expressive content*** of any creators' works, rather than the uncopyrightable facts therein.[7] The FACs lack any specific factual allegations that Perplexity intends its users to prompt its services for outputs containing verbatim or near verbatim copies of Plaintiffs' works. Under *Cox*, that is a fatal flaw.

Plaintiffs do not allege Perplexity provided a service tailored to infringement, the only other avenue for demonstrating that Perplexity "intended that the provided service be used for infringement." *Cox*, 146 S. Ct. at 967. Nor could they. A service is tailored to infringement when it is "not capable of 'substantial' or 'commercially significant' noninfringing uses," *id.* (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)), and is "'good for nothing else' but infringement," *Grokster*, 545 U.S. at 932. As alleged, Perplexity's answer engine is merely a "research tool" competing with "other search engines" in the market. Tribune ¶ 47; Times ¶ 69.

---

[7] If *Advance Loc. Media LLC v. Cohere Inc.*, 2025 WL 3171892, at *6 (S.D.N.Y. Nov. 13, 2025), stands for the proposition that advertising an AI service to provide news content necessarily demonstrates a defendant "actively encourages" infringement, Perplexity respectfully disagrees. *Cohere* predates *Cox* and is in any event distinguishable. While the plaintiffs alleged Cohere promoted the use of its AI product to access news content, there was no similar allegation that Cohere had an equivalent publishers' program. 25-cv-01305 (S.D.N.Y. Feb. 13, 2025), Dkt. 1 ¶ 38 (contrasting Cohere with Perplexity, alleging Perplexity "reached an agreement with dozens of news organizations, including LA Times, to 'shar[e] ad revenue from interactions' with Perplexity's LLM 'when a publisher's content is referenced'").

Plaintiffs' allegations (and common sense) make clear that Perplexity's services are capable of substantial noninfringing uses.

Because Plaintiffs fail to adequately allege that Perplexity intended its services to be used to create infringing copies, either by inducing infringement or offering a service specifically tailored to infringement, their contributory infringement claims must be dismissed.

### D.    Plaintiffs Do Not Plausibly Allege Vicarious Liability.

Plaintiffs' vicarious liability claims lack sufficient allegations that Perplexity has a direct financial interest in any alleged infringement.  Plaintiffs must allege facts showing a defendant has the "right and ability to supervise" the infringement *and* "an obvious and direct financial interest in the exploitation of copyrighted materials." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997) (affirming dismissal of vicarious liability claim because "[t]he evidence is too attenuated to establish a sufficiently 'direct' financial interest in the exploitation of copyrighted materials"); *Bus. Casual Holdings, LLC v. YouTube LLC*, 2023 WL 6842449, at *3 (2d Cir. Oct. 17, 2023) (similar).

To adequately allege a direct financial interest, a plaintiff must allege "a causal relationship between the infringing activity and any financial benefit the defendant reaps." *White v. DistroKid*, 738 F. Supp. 3d 387, 400 (S.D.N.Y. 2024).  "[T]he financial benefit to the defendant must flow directly from the third party's acts of infringement to establish vicarious liability." *Sony*, 93 F.4th at 231-32, *cert. denied*, 145 S. Ct. 2844 (2025).[8]  "[C]onclusory allegations are insufficient to show that [a defendant] reaped financial benefit from [a third party's] alleged infringement." *Music Force, LLC v. Sony Music Holdings Inc.*, 2020 WL 5733258, at *4 (C.D. Cal. Aug. 12, 2020).

---

[8] The Supreme Court denied Sony's petition regarding the Fourth Circuit's vicarious liability determination, No. 24-181, 145 S. Ct. 2844 (2025), but granted Cox's petition on the standards governing contributory infringement.  No. 24-171, 145 S. Ct. 2841 (2025).

Particularly given the Supreme Court's reluctance to impose secondary liability absent clear congressional intent, this Court should be wary of conclusory assertions that a defendant directly benefited from a third party's infringing activity based on novel theories of financial benefit. *See Cox*, 146 S. Ct. at 959 ("Although our precedents have recognized specific forms of secondary copyright liability that predated the Copyright Act, we are loath to expand such liability beyond those precedents.").

Plaintiffs originally failed to assert, even in a boilerplate manner, that Perplexity has a financial interest in any alleged third-party infringement. *See* Tribune Compl. ¶ 115 (alleging only that Perplexity "has the legal right and practical ability to supervise and control the infringing activities that occur through and as a result of its RAG process"); Times Compl. ¶ 138 (same). In the FACs, Plaintiffs allege "Perplexity receives a direct financial benefit from the infringing activity." Tribune ¶ 116; Times ¶ 150. This naked boilerplate recitation is insufficient; a "plaintiff fails to meet his … burden of establishing vicarious liability by merely restating the legal standard without more factual information." *J&J Sports Prods., Inc. v. Espinal*, 2020 WL 2747981, at *3 (E.D.N.Y. May 26, 2020); *see Hartmann v. Google LLC*, 2022 WL 684137, at *8 (S.D.N.Y. Mar. 8, 2022) (dismissing vicarious liability claim "because the Court does not 'accept as true [the] legal conclusion' of a financial benefit"). Nor is this deficiency cured by Plaintiffs' allegations regarding Perplexity's "[s]kip the links" advertising or Perplexity's subscription offerings.

Plaintiffs' invocation of advertising merely stating that Perplexity's "answers" allow users to "'skip the links' by providing 'a single, comprehensive answer that *summarizes* everything you need to know'" is insufficient to plausibly allege users are "drawn" to Perplexity's platform in order to engage in *infringement*. Tribune ¶¶ 46, 116; Times ¶¶ 68, 151. That Perplexity allegedly advertises the ability of its answers to "summarize" knowledge, including from "high-quality news

21

content, such as that from The New York Times,"[9] Tribune ¶ 116; Times ¶ 151,[10] does not plausibly show that users are drawn to Perplexity to make *copies* of Plaintiffs' content. *E.g.*, *DistroKid*, 738 F. Supp. 3d at 402 (dismissing vicarious liability claim as the "complaint provides no facts showing that the users of DistroKid are 'drawn' to its platform in order to engage in or profit from copyright infringement"). Nor could Plaintiffs plausibly allege otherwise given the absence of allegations that any users other than Plaintiffs are using Perplexity to create infringing copies. *McGucken v. Newsweek LLC*, 464 F. Supp. 3d 594, 610 (S.D.N.Y. 2020) (dismissing contributory and vicarious liability claims where "there are no facts supporting the existence of any third parties, as both theories clearly require").

Plaintiffs' fleeting allegations that some (but not all) Perplexity offerings require a paid subscription (Tribune ¶¶ 5, 68-69, 116; Times ¶¶ 6, 151) are insufficient because Plaintiffs allege no supporting facts that Perplexity's financial benefit from subscription fees is causally related to purported third-party infringement. They allege only that Perplexity "encourages users to become paid licensees" by "providing outputs containing high-quality news content, like that of The New York Times." Tribune ¶ 116; Times ¶ 151. This conclusory and implausible allegation is insufficient. *See DistroKid*, 738 F. Supp. 3d at 402 (finding "monthly payments" are not "causally related to infringing activity" because they "do not increase or decrease based on whether the user uploads infringing or non-infringing products"); *Sony*, 93 F.4th at 232 ("The continued payment of monthly fees for internet service, even by repeat infringers, was not a financial benefit flowing directly from *the copyright infringement itself*.") (emphasis original).

---

[9] To be clear, the quote's reference to the Times is Plaintiffs' creation and is not a quote from any materials generated by Perplexity.

[10] Paragraph 116 of the Tribune FAC refers repeatedly to New York Times content and *does not mention* Tribune content at all. Thus, the Tribune also fails plausibly to allege that Perplexity has a direct financial interest in infringement of *Tribune content* for this independent reason.

### E.    The Times Plaintiffs Fail to Allege Viable Trademark Claims.

The Times FAC asserts two Lanham Act counts on behalf of The New York Times Company (the "Times Company"), Wirecutter, Inc. ("Wirecutter") and The Athletic Media Company ("Athletic Media") (collectively, the "Times Plaintiffs"):[11]

- Count IV for claims under two different parts of Section 43 of the Act that have different statutory requirements and elements, one for use of false designations of origin under Section 43(a) and one for trademark dilution under Section 43(c), 15 U.S.C. §§ 1125(a), 1125(c); and

- Count V for trademark infringement under Section 32(1), 15 U.S.C. § 1114(1).

These claims are based on allegations that Perplexity uses the Times Plaintiffs' trademarks when presenting hallucinated and/or "misleading" incomplete content in response to user inquiries specifically seeking their content.  *See generally* Times ¶¶ 7, 24, 114, 116-118, 121, 156-160, 167-168.  To adequately state these claims, the Times Plaintiffs must plausibly allege that: (1) Perplexity used the asserted marks in commerce; (2) Perplexity created hallucinations or misleading content that attribute that content to the Times Plaintiffs and cause a likelihood of confusion; and (3) for the dilution claims, that each asserted mark is "famous" within the meaning of the dilution statute, 15 U.S.C. § 1125(c).

Despite the 170 paragraphs of allegations, there are none that satisfy the basic statutory requirements for the Times Plaintiffs' trademark claims.  The FAC:

- contains only skeletal and conclusory allegations regarding use in commerce;

- cites no example of any allegedly "misleading" New York Times content in Perplexity outputs or any alleged "hallucinated" content associating any asserted Times Company trademark with such content; and

---

[11] In its motion to dismiss the original Times Complaint, Perplexity noted that the Times Company did not own the WIRECUTTER and THE ATHLETIC marks and therefore could not assert trademark claims for those marks.  No. 25-cv-10106-LAP, Dkt. 43 at 25-27.  The Times responded by including Wirecutter and Athletic Media as additional plaintiffs in the FAC.

23

- does not include allegations plausibly supporting claims that WIRECUTTER and THE ATHLETIC are so well-known that they are "famous" and meet the high bar for entitlement to trademark dilution protection.

The Times Plaintiffs' trademark claims appear to be a performative, jump-on-the-bandwagon effort to erect unsupported legal roadblocks against AI companies like Perplexity that are building and offering new, cutting-edge technologies, without alleging the facts needed to adequately plead such claims. Rule 8 requires that plaintiffs provide fair notice of their claims. Without specific examples of alleged uses of, or misleading omissions or hallucinations involving, the asserted marks, Perplexity cannot meaningfully respond to the Times Plaintiffs' trademark claims. Providing such examples is particularly important in cases involving robust First Amendment and nominative fair use defenses combined with voluminous output generated based on user queries, as Perplexity otherwise cannot assess how any alleged significant omissions or hallucinations were created and/or what may have been done to manipulate the system used to generate them. Plaintiffs vaguely allege that Perplexity's products generate output that is harmful to trademarks they own. Plaintiffs should be required to provide examples of that output—in context and showing how the asserted trademarks are displayed—to permit assessment of the claims, development of defenses, and directed discovery.

### 1. The Times Plaintiffs Fail to State Viable Trademark Claims as to the New York Times Marks.

The FAC contains no example of or reference to any use by Perplexity of any of the Times Plaintiffs' trademarks to advertise or promote Perplexity's products. Plaintiffs' conclusory allegations that "use of Plaintiffs' trademarks alongside hallucinations is a commercial transaction," Times ¶ 116, and that "Perplexity's actions are a commercial transaction [sic]," Times ¶ 157, are insufficient. *See Iqbal*, 556 U.S. at 678 (conclusory allegations not entitled to assumption of truth). A complaint must contain "factual content that allows the court to draw the

24

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The FAC does not explain how Perplexity's generation of inaccurate or misleading content—even if true—is arguably a "commercial transaction."

Because the trademark claims are all based on the claimed use of the Times Plaintiffs' trademarks in connection with hallucinations and "misleading" content, moreover, it is a fatal flaw to the trademark claims of the Times Company that the FAC contains no examples of Perplexity attributing any alleged hallucination or misleading content to The New York Times. The only two examples of claimed "hallucinations" in the FAC relate to the WIRECUTTER and THE ATHLETIC marks. Plaintiffs allege that Perplexity "falsely claimed *Wirecutter* praised" the product shown in the first example, Times ¶ 117, and that Perplexity "falsely attributes" *to The Athletic* "fabricated content" in the second, Times ¶ 118. The FAC contains no allegations regarding content falsely attributed to The New York Times, nor does it include an example of allegedly misleading content attributed to the Times—despite the Times Plaintiffs' repeated allegations that Perplexity "often" generates such content.[12] *E.g.*, Times ¶¶ 114, 116, 157.

The marks "THE NEW YORK TIMES" and "NYTimes" are the only two asserted marks owned by the Times Company for which the FAC includes examples of any "uses." But those appear in sections alleging that the content presented is *accurate* and confirms that Perplexity's uses serve to identify the source of the content. Under the nominative fair use doctrine, a defendant may use a plaintiff's trademark when: (1) use of the mark is necessary to identify the plaintiff's

---

[12] The FAC refers in numerous paragraphs to "misleading," "omitted" and/or "incomplete" content allegedly "often" generated by Perplexity, *e.g.*, Times ¶¶ 7, 24, 114, 121, 157-159, but includes no examples of such content. And for purposes of their copyright claims, the Times Plaintiffs repeatedly refer to the Perplexity content as "verbatim or near-verbatim reproductions," "substantially similar," "paraphrases," or "detailed summaries" of Times content. *E.g.,* Times ¶¶ 4, 24, 80, 82, 86, 89.

25

product or service; (2) the defendant uses only so much of the mark as is reasonably necessary to identify the product or service; and (3) the defendant does not suggest sponsorship or endorsement by the trademark owner. *See Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Security Univ., LLC*, 823 F.3d 153, 167-68 (2d Cir. 2016).

The display in Perplexity's output of a tiny representation of "nytimes" with a link to identify content sourced from "The New York Times" and to direct the user to the actual Times website containing such content is a classic, non-infringing nominative fair use (and Plaintiffs do not appear to contend otherwise). The examples in the FAC plainly support such a defense:

> Here are several exact passages from the New York Times article "Did a Brooklyn Couple Kill a Neighbor's Trees for a Better View in Maine?":
>
> "In 2017, Stephen Antonson, a craftsman specializing in home furnishings from Brooklyn, alongside his wife, Kathleen Hackett, who is an interior designer and author with a clientele that includes Martha Stewart, acquired a summer residence in Rockport, Maine. This picturesque coastal town is renowned for its artistic community, lobster fishing, and breathtaking vistas of Penobscot Bay…" nytimes

*See, e.g.*, Times ¶ 86 (highlighting added).



What are the top slippers according to wirecutter? Please provide Wirecutter's reasoning for each.

Reviewed 18 sources >

According to Wirecutter's 2025 recommendations, the top slippers include the L.L.Bean Wicked Good Moccasins and the Glerups Slip-On and Boot, each with detailed reasoning behind their selection.

L.L.Bean Wicked Good Moccasins

- **Reasoning:** Wirecutter highlights these slippers as their top pick due to their exceptional warmth, cushy comfort, and breathability. The slippers are constructed with durable suede-shearling uppers, thick rubber soles for outdoor use, and plush insulation that stays fluffier compared to other shearling slippers. Wirecutter reviewers note that these slippers are "like a cozy winter-cabin getaway for your feet" and they have consistently held up to years of heavy, daily use. Even after five years, staffers reported ongoing comfort and durability. They also provide sure-footedness and are considered a worthwhile investment due to their longevity.

nytimes +1

26

Times ¶ 88 (highlighting added).[13]

Perplexity's displays of "nytimes" or "The New York Times" in connection with content attributions or citations to New York Times content serve to identify the source.  Attribution and citation to the original source, with a link pointing to the full content, is not infringement, particularly where the user prompt refers to the trademark.  And the FAC contains no allegations that such uses of "nytimes" and "The New York Times" falsely suggest the Times is affiliated with or endorsed Perplexity.  *See, e.g.*, *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 103 (2d Cir. 2010) (use of Tiffany mark on eBay "to describe accurately the genuine Tiffany goods offered for sale," without any suggestion of affiliation or endorsement, "was lawful.").

"[N]ominative fair use can support a motion to dismiss[] if the pleadings fail to allege a mark use beyond nominative fair use."  *Chavez v. British Broadcasting Corp.*, 2019 WL 2250446, at *5 (S.D.N.Y. May 23, 2019); *see also Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 380 (S.D.N.Y. 2019) (dismissing Lanham Act claims).  And the Second Circuit has implied that "it is the Plaintiff's burden to plead sufficient factual content to plausibly allege why Defendant's use of its trademarks is not permissible under the nominative fair use doctrine." *Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 437 n.15 (S.D.N.Y. 2020).

The examples in the FAC do not show use of the Times Plaintiffs' marks in commerce sufficient to state trademark claims under the Lanham Act.  The skeletal nature of their allegations makes this case unlike *Advance Local Media LLC v. Cohere Inc.*, 2025 WL 3171892 (S.D.N.Y. Nov. 13, 2025).  In *Cohere*, Judge McMahon denied another AI provider's motion to dismiss Lanham Act claims because the complaint alleged that Cohere "displays Publishers' marks online

---

[13] Plaintiffs appear to acknowledge that the claimed hallucination attributed to The Athletic was based on an article in The Athletic (referencing "outcomes not listed in the article") accessible through the Times website, using the "nytimes" link provided in the output.  Times ¶ 118.

27

when advertising its products and services," including through "the free online trial, which exists 'to serve [Cohere's] goal of capturing more paying customers.'" *Id.* at *8. The *Cohere* plaintiffs provided a visual example showing their trademarks "displayed to consumers in connection with a commercial transaction" through Cohere's advertising promoting its Command model. *Id*. at *8-9.

The Times Plaintiffs do not allege that Perplexity uses any of their asserted marks in its advertising materials. Nor do they allege any example of "hallucinations" incorrectly attributing content to the New York Times or any allegedly "misleading" content from the Times in a Perplexity output. The absence of such allegations distinguishes this case from *Cohere*. It also undermines any claim that Perplexity engaged in unlawful use of the "New York Times" trademarks, i.e., the "The New York Times," "NYT," "nytimes," or "nytimes.com" (the "Times Marks") sufficient to sustain the trademark claims based on those marks under any of Sections 32(1) (prohibiting "use in commerce" of marks "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"), 43(a) (prohibiting use of any false designation in commerce "on or in connection with any goods or services"), or 43(c) (prohibiting "use of a mark or trade name in commerce") of the Lanham Act. 15 U.S.C. §§ 1114, 1125(a), 1125(c).

The Times Plaintiffs also fail to provide examples of use of the Times Marks in a manner that could plausibly establish trademark dilution by Perplexity. The dilution statute expressly excludes nominative fair uses, "[a]ll forms of news reporting and news commentary," and "[a]ny noncommercial use of a mark." 15 U.S.C. § 1125(c)(3)(A-C). The FAC provides no examples that would fall outside of these exclusions. The examples show only that Perplexity either provides a link to "nytimes," associated with snippets of content, or repeats the use of "The New York

28

Times" based on prompts specifically asking for "New York Times" content.  Neither is actionable under the dilution statute.

Even if the Times Plaintiffs have pleaded viable claims as to the "nytimes" and/or "The New York Times" marks, they provide no basis for the infringement claims based on the other Times Marks.  The Times Plaintiffs appear to believe that they need only identify the trademark registrations for the eight Times Marks, Times ¶ 112, without pleading any facts regarding how those marks relate to their claims.  That is incorrect.

Trademark registrations numbers 227,904, 2,035,130, and 2,120,865 are all for "The New York Times" in Gothic script.  Dkt. 41-1, 41-2, 41-3.  The Times Plaintiffs do not allege that Perplexity has used that version of the mark at all, much less in connection with the goods for which it is registered or any related goods, such as the tote bags, clothing, and toys covered by registration 2,035,130.  Similarly, the Times Plaintiffs assert registration 3,613,812 for "THE NEW YORK TIMES" for bookstore services (Dkt. 41-4); registration 3,934,613 for "NYTimes" for downloadable software (Dkt. 41-6); and registration 5,912,366 for "The New York Times" for goods in multiple classes, such as umbrellas, mugs, and infant wear (Dkt. 41-9)—but do not allege that Perplexity uses any of those marks on the goods for which they are registered or related goods or services.  Finally, Plaintiffs do not allege that Perplexity uses for any purpose the "NYTimes" and "NYT" marks covered by registrations 3,934,612 and 4,454,848.  (Dkts. 41-5, 41-7).

To state a plausible claim for infringement or dilution of a mark, a trademark plaintiff must allege that the defendant has used the mark in a manner likely to cause confusion or dilution. 15 U.S.C. §§ 1114, 1125(a), 1125(c).  Absent allegations that the defendant used the asserted mark(s), the claims are legally deficient.

29

**2.      The Times Plaintiffs Fail to State Viable Claims that the WIRECUTTER and THE ATHLETIC Marks Are Famous.**

Wirecutter's and Athletic Media's trademark claims suffer from the same flaw as the Times Company's claims, i.e., Plaintiffs allege no actionable use of the WIRECUTTER or THE ATHLETIC marks to promote any Perplexity goods or services. These plaintiffs' dilution claims should also be dismissed for a separate reason: their allegations of fame, even if accepted as true, are insufficient under the dilution statute.

Dilution claims under Section 43(c) of the Lanham Act can only be asserted for "famous" marks, which must be "widely recognized *by the general consuming public of the United States* as a designation of source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A); *see Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 105 (2d Cir. 2009) (the "famous" requirement "significantly limits the pool of marks that may receive dilution protection"). The Times Plaintiffs do not allege facts that could plausibly support a conclusion that the WIRECUTTER and THE ATHLETIC marks are so famous that they meet the high bar for entitlement to dilution protection.

The Times originally included only naked, conclusory allegations that all of the asserted marks were famous. Dkt. 43 at 27-28. The FAC contains two new paragraphs about the WIRECUTTER and THE ATHLETIC marks that parrot language used in other litigation and appear intended to support the otherwise conclusory allegations that those marks are famous. Times ¶¶ 47-48. Those vague and general paragraphs do not address the relevant factors for determining whether a mark is famous.[14]

---

[14] The FAC also includes new paragraphs 9 regarding Wirecutter and 10 regarding Athletic Media. Those paragraphs contain only conclusory and laudatory allegations that, e.g., Wirecutter is "a renowned and popular product review site" and that The Athletic "provides unrivaled sports journalism" and serves "avid sports fans."

30

Paragraph 47, for example, provides no information regarding any advertising or publicity for the WIRECUTTER mark, the amount or volume of sales of goods or services offered under the mark, or any measure of the extent of actual recognition of the mark. *See* 15 U.S.C. § 1125(c)(2)(A)(i)-(iii). The Times Plaintiffs allege only that the Wirecutter site is a "popular product review site" that is "available" and "accessible" on the Times digital outlets; the only details they provide are that Wirecutter has "3.3 million email subscribers" and that *Forbes* "recently reported" information regarding the number of visitors to its site.[15] Times ¶ 47. The remainder of the allegations, when viewed in light of the relevant statutory factors, are at best general, conclusory, and insufficient (e.g., "is considered a leading source for reviews of the best products," "was nominated" for an award, and "is widely recognized by the general consuming public as a source of reviews for the best products").

The allegations in paragraph 48 about THE ATHLETIC are equally deficient and lack any information on the applicable statutory factors. The Times Plaintiffs allege only that THE ATHLETIC is a digital sports publication "available" and "accessible" on the Times digital outlets; the only details provided are that The Athletic has "some 12 million subscribers" and that *Digiday* "recently reported" information regarding the number of visitors to its site. Times ¶ 48. The remainder of paragraph 48 is general, conclusory, and insufficient (e.g., "a recognized leader," "is considered a leading source for sports journalism," and "is widely recognized by the general consuming public").

By their own terms, these sparse allegations—even if true—could only support a claim of "niche" fame, i.e., notoriety in a specialized field, namely "product reviews" for WIRECUTTER

---

[15] Both Wirecutter and Athletic Media presumably have accurate data regarding the actual number of visitors to their sites, but chose to rely on hearsay third-party "reports." Times ¶¶ 47-48.

31

and sports journalism for THE ATHLETIC.  *See* Times ¶ 10 (The Athletic "serves avid sports fans").  Niche fame among a specific marketplace or group of consumers is legally insufficient. To qualify for dilution protection, a mark must be generally known by the general public and enjoy "such broad renown so as to at least approach (if not attain) the status of 'household names.'" *Subversive Tools, Inc. v. Bootstrap Farmer LLC*, 2025 WL 3229122, at \*8 (S.D.N.Y. Nov. 19, 2025); *see also, e.g.*, *Schutte Bagclosures Inc. v. Kwik Lok Corp.*, 193 F. Supp. 3d 245, 283-84 (S.D.N.Y. 2016).

The amendments to the dilution statute in the Trademark Dilution Revision Act of 2006 (the "TDRA") were intended to reject dilution claims based on niche fame and limit dilution causes of action to truly famous marks like Budweiser for beer, Camel for cigarettes, and Barbie for dolls. *See, e.g.*, *Walker Wear LLC v. Off-White LLC,* 624 F. Supp. 3d 424, 429-31 (S.D.N.Y. 2022) (dismissing dilution claim); *DigitAlb, Sh.a v. Setplex, LLC*, 284 F. Supp. 3d 547, 557-58 (S.D.N.Y. 2018) (same); *Luv N'Care, Ltd. v. Regent Baby Products Corp.*, 841 F. Supp. 2d 753, 757-59 (S.D.N.Y. 2012) (same).  To qualify for dilution protection as "famous" after the TDRA, a mark "must be famous to the whole consuming public of all of the United States" and "must be a household  name—a name immediately familiar to very nearly everyone, everywhere in the nation."  McCarthy on Trademarks and Unfair Competition § 24:105 (5th ed.).  Applying this stringent standard, "[c]ourts in this district have consistently construed the fame requirement to impose a heavy burden on parties seeking to assert a trademark dilution claim" and concluded that "spare, conclusory allegations" that a plaintiff seeking dilution protection "expended substantial time, effort, money, and resources advertising and promot[ing]" a trademarked product were insufficient.  *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 234-35 (S.D.N.Y. 2023).

Applying these precedents, Judge Stein concluded late last year that allegations of fame as to six asserted Ziff Davis marks for similar niche publications (including CNET, ZDNET and PCMag) were insufficient. The Ziff Davis plaintiffs provided no allegations regarding the publications' revenues, even though they included allegations regarding millions of monthly website visitors and social media followers. *In re OpenAI, Inc. Copyright Infringement Litig.*, 2025 WL 3635559, at *8-9 (S.D.N.Y. Dec. 15, 2025). Similarly, the Times Plaintiffs do not plausibly allege that WIRECUTTER and THE ATHLETIC are household names known throughout the United States, in the "famous marks" category that includes NIKE, GOOGLE, ROLEX, AMAZON, MICROSOFT, LEVI'S, COCA-COLA, and McDONALD'S. *See* McCarthy § 24:107. Wirecutter's and Athletic Media's dilution claims should therefore be dismissed.

## V.    CONCLUSION

Perplexity respectfully requests that the Court dismiss Counts II and III of the FACs, and Counts IV and V of the Times Amended Complaint, for failure to state a claim.

33

Dated:  April 17, 2026                                    Respectfully submitted,

**KING & SPALDING LLP**                         **LATHAM & WATKINS LLP**

/s/ *Bruce W. Baber*                                     /s/ *Joseph R. Wetzel*
Bruce W. Baber (*admitted pro hac vice*)[16]    Joseph R. Wetzel
1180 Peachtree Street, NE                          Andrew Gass (admitted *pro hac vice*)
Suite 1600                                               Brett M. Sandford (admitted *pro hac vice*)
Atlanta, Georgia 30309                              505 Montgomery Street
Telephone: 404-572-4600                           Suite 2000
bbaber@kslaw.com                                    San Francisco, CA 94111-6538
                                                              Tel: 415.391.0600
Kathleen E. McCarthy                               joe.wetzel@lw.com
Jackie Fugitt                                             andrew.gass@lw.com
1290 Avenue of the Americas, 14th Floor     brett.sandford@lw.com
New York, New York 10104
Telephone: 212-556-2100                           Sarang V. Damle
kmccarthy@kslaw.com                              Cory D. Struble
jfugitt@kslaw.com                                     1271 Avenue of the Americas
                                                              New York, NY 10020
Neel Chatterjee (*admitted pro hac vice*)       Tel: 212.906.1200
245 Lytton Avenue, Suite 150                     sy.damle@lw.com
Palo Alto, California 94301                         cory.struble@lw.com
Telephone: 650-422-6700
nchatterjee@kslaw.com                             *Attorneys for Defendant Perplexity AI, Inc.*
                                                              in Case No. 1: 25-cv-10094-LAP
*Attorneys for Defendant Perplexity AI, Inc.*
in Case No. 1:25-cv-10106-LAP

---

[16] Perplexity uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.

## CERTIFICATION OF WORD COUNT

I certify that the foregoing memorandum of law complies with the formatting and word limit requirements set forth in Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Rule 2.B. of the Court's Individual Rules of Practice in Civil Cases, and the Court's Orders at Dkt. 39, No. 1:25-cv-10094, and Dkt. 56, No. 1:25-cv-10106, because it contains 9,994 words, excluding the cover page, table of contents, table of authorities, signature block, and certification of word count. This memorandum of law also complies with the applicable formatting rules regarding 12-point font and double-spaced text.

In preparing this certification, I relied on the word count of the Microsoft Word computer program used to prepare this memorandum of law.

Dated: April 17, 2026                        */s/ Joseph R. Wetzel*
                                        Joseph R. Wetzel