**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

THE NEW YORK TIMES COMPANY,
WIRECUTTER, INC., and THE ATHLETIC
MEDIA COMPANY,

        Plaintiffs,

    v.

PERPLEXITY AI, INC.,

        Defendant.

Civil Action No. 1:25-cv-10106-LAP

---

**RULE 26(f) REPORT AND PROPOSED CASE MANAGEMENT PLAN**

In accordance with Rules 26(f) and 16(b) of the Federal Rules of Civil Procedure, the parties respectfully submit this report of their Rule 26(f) conference and proposed case management plan.

## I.     INTRODUCTION

1.     The parties met and conferred as required by Rule 26(f) on March 25, 2026.

2.     Plaintiffs' position: As detailed below, Plaintiffs The New York Times Company ("The Times"), Wirecutter, Inc. ("Wirecutter"), and The Athletic Media Company ("The Athletic") (collectively, "Plaintiffs") and the Chicago Tribune Company, LLC, plaintiff in 1:25-cv-10094-LAP (the "Tribune Action"), proposed that the parties submit a consolidated report under Rule 26(f) and proceed under a joint discovery plan in both this action and the Tribune Action. Defendant Perplexity AI, Inc. ("Perplexity") has objected both to: (a) submission of a

consolidated Rule 26(f) report; and (b) to certain of the discovery consolidation provisions proposed by Plaintiffs. *See* ¶¶ 30-32, below. As a result, separate, but nearly substantively identical Rule 26(f) reports are being submitted simultaneously in this action and in the Tribune Action.

3.      **Defendant's Statement:** Perplexity believes it would be inappropriate for a single Rule 26(f) report to be submitted in both this action and the Tribune Action, as the cases have not been consolidated and the two cases could take different procedural paths going forward, especially in light of (a) the fact that The Times has asserted in this action many more copyrights and works, and more different trademarks, than the Tribune has in the Tribune Action; and (b) Perplexity has moved to dismiss Plaintiffs' trademark claims (Counts IV and V) in this action but not in the Tribune Action.  As Plaintiffs note, Perplexity has cooperated with the plaintiffs in both actions in preparing the Rule 26(f) reports and agreeing to the same initial schedule for both cases.

## II.      SUMMARY OF CLAIMS AND DEFENSES

4.      In the original Complaint, Plaintiff The Times filed claims for direct, contributory, and vicarious copyright infringement under the Copyright Act (17 U.S.C. § 106) and trademark infringement, false designation of origin, and dilution (15 U.S.C. §§ 1114, 1125(a), 1125(c)).  Dkt. No. 1. Plaintiffs The Times, Wirecutter, and Athletic Media filed a First Amended Complaint on March 20, 2026.  Dkt. No. 44. In the First Amended Complaint, The Times asserts claims for direct copyright infringement and for contributory and vicarious copyright infringement (Counts I-III), and all three Plaintiffs assert claims for use of false designations of origin and trademark dilution (Count IV) and for trademark infringement (Count V).

5.      On April 17, 2026, Defendant Perplexity AI, Inc. ("Perplexity") filed a Consolidated Motion to Dismiss Plaintiffs' First Amended Complaints in this action and in Civil Action No. 1:25-cv-10094 (LAP), seeking to dismiss Counts II and III of Plaintiff's First Amended

Complaints in both cases for failure to state a claim that Perplexity is directly liable (Count II) or secondarily liable (Count III) for copyright infringement based on allegedly infringing answers automatically generated in response to user questions. Perplexity also moved to dismiss Counts IV and V of Plaintiffs' First Amended Complaint in this action for failure to state a claim for use of false designations of origin, trademark dilution or trademark infringement. Dkt. Nos. 57-58.[1] Plaintiffs consolidated opposition to Perplexity's Motion to Dismiss was filed on May 15.

### A.    PLAINTIFFS' STATEMENT

6.    Plaintiff The Times publishes digital and print products, including its core news product, *The New York Times*, which is available on its mobile applications, on its website (NYTimes.com), and as a printed newspaper, and associated content such as its videos and podcasts. Times journalists cover the most important stories across the globe; in a typical year, The Times sends journalists to report on the ground from more than 170 countries. The Times owns millions of registered, copyrighted works.

7.    Plaintiff Wirecutter, a wholly owned subsidiary of The Times that is published by The Times, is a product review site that recommends products in various categories. Wirecutter was founded in 2011 and was acquired by The Times in 2016. Wirecutter is available on The Times's mobile application and websites.

8.    Plaintiff The Athletic, a wholly owned subsidiary of The Times and available on The Times's mobile application and websites, as well as a standalone mobile application, provides in-depth coverage of hundreds of professional and college teams across major sports leagues globally. The Athletic was founded in 2016 and acquired by The Times in 2022.

---

[1]    Perplexity previously moved, on February 27, 2026, to dismiss the original Complaint, which motion was mooted when Plaintiffs filed the First Amended Complaint.

9.     Plaintiffs allege that Perplexity's conduct violates Plaintiffs' exclusive rights under the Copyright Act at two principal stages: First, at the input stage, Perplexity unlawfully crawls, scrapes, copies, and distributes Plaintiffs' content from Plaintiffs' websites and third-party platforms using software programs including "PerplexityBot" and "Perplexity-User" to build an "AI-First" search index and to provide Plaintiffs' content in real time as input to LLMs to formulate a response to a user query. And second, at the output stage, when Perplexity's GenAI Products generate outputs that are identical or substantially similar to Plaintiffs' content.

10.     Plaintiffs allege that Perplexity's large-scale, unlawful copying and distribution of Plaintiffs' copyrighted content and use of that content to power its products offered to users, and which substitutes for Plaintiffs' content, constitutes direct, vicarious, and contributory copyright infringement in violation of Plaintiffs' intellectual property rights.

11.     Plaintiffs allege that Perplexity committed trademark dilution by tarnishment through its unauthorized use of The Times, Wirecutter and Athletic Media marks (collectively, "Plaintiffs' trademarks") on inaccurate outputs, also called "hallucinations," from Perplexity's GenAI products, resulting in false attribution to Plaintiffs.

12.     Plaintiffs allege Perplexity violated 28 U.S.C. § 114 (false designation of origin) by using Plaintiffs' trademarks and/or confusingly similar marks in a manner that causes and/or is likely to confuse, mistake, or deceive consumers into believing that Perplexity's outputs are factually correct, complete, and authoritative because they are sourced from, associated with, sponsored by, or approved by Plaintiffs.

13.     Plaintiffs submit that the principal facts and legal issues in dispute include:

    a.     Whether and to what extent Perplexity unlawfully crawls and scrapes Plaintiffs' content from Plaintiffs' websites and from third-party platforms

using its own and third-party software programs, including "PerplexityBot" and "Perplexity-User."

b.    Whether and to what extent Perplexity unlawfully copied, reproduced, and/or used Plaintiffs' content in connection with its GenAI products;

c.    Whether Perplexity's unauthorized use of Plaintiffs' content was willful;

d.    The degree to which Perplexity profited from its unauthorized copying, reproduction, and/or use of Plaintiffs' content in their GenAI products;

e.    To what extent Perplexity's unauthorized copying, reproduction, and/or use of Plaintiffs' content has usurped commercial opportunities for or otherwise damaged Plaintiffs;

f.    To what extent Perplexity's unauthorized copying, reproduction, and/or use of Plaintiffs' content, including in connection with inaccurate outputs, has harmed the Plaintiffs' reputation and/or the strength of its trademarks;

g.    To what extent Perplexity's unauthorized copying, reproduction, and/or use of Plaintiffs' trademarks caused confusion, mistake, or deception of Perplexity consumers into believing that Perplexity's outputs are factually correct, complete, and authoritative;

h.    Whether Perplexity can establish the elements of fair use despite the commercial purpose and massive scale of Perplexity's unauthorized copying, reproduction, and/or use of Plaintiffs' content and the harmful impact of Perplexity on the market for Plaintiffs' works.

### B.    DEFENDANT'S STATEMENT

14.    Perplexity is a San Francisco-based artificial intelligence company founded in 2022 with a mission to make the vast quantity of knowledge available on the internet more accessible, useful, and trustworthy.

15.    One of Perplexity's core products is a novel and groundbreaking AI tool known as an "answer engine," a search engine that combines the power of AI and the open internet to provide accurate, reliable answers to users' questions.  When a Perplexity user inputs a question, the answer engine uses large language models ("LLMs") to understand the user's query, searches the internet in real time, gathering factual insights from a variety of sources, and then finally distills this factual information into a clear, concise summary in an easy-to-understand, conversational tone. Perplexity's answer engine uses retrieval-augmented generation ("RAG") to cull facts in real time from numerous sources and then condenses and summarizes those facts using LLMs, which automatically generates a natural-language response incorporating facts gathered from the internet in response to each user question.

16.    Perplexity denies Plaintiffs' allegations of infringement.  Perplexity complies fully with copyright law and has not engaged in any use of false designations of origin or any dilution or infringement of Plaintiffs' asserted trademarks.

17.    Indeed, Perplexity's fully automated process of indexing content from the internet and using it on the back-end to cull unprotectable facts for use in response to users' specific questions is quintessential fair use.  Perplexity's answer engine provides links to the sources for the facts presented in its outputs, just like search engines that have long been fundamental to how people locate and access information online.  For decades, courts have recognized those services as consistent with copyright law under the fair use doctrine.  The same is true of Perplexity's

6

answer engine.  Perplexity's alleged use of Plaintiffs' content to locate and extract unprotectable facts and to provide those facts to users through AI technology is transformative, is limited in scope, is unrelated to the creative aspects of Plaintiffs' content, and neither has usurped nor will usurp any existing or potential legitimate market for any expressive content in Plaintiffs' asserted works.

18.    Further, as explained in Perplexity's pending motion to dismiss (Dkt. 58), The Times fails to state a viable claim for direct infringement based on answer engine "outputs" (Count II) because none of The Times' allegations demonstrates volitional conduct by Perplexity.  By The Times' own allegations, it is the user (here, The Times or its counsel), not Perplexity, who engaged in any "volitional conduct" required for direct liability because each allegedly infringing output was generated solely in response to specific user prompts (which were carefully crafted by The Times or its counsel to manufacture claims of infringement).  And The Times has failed to plead any facts supporting a claim of alleged infringement for all but a handful of its millions of asserted works, separately requiring dismissal of the copyright infringement claims as to the remaining works.

19.    As further demonstrated in Perplexity's motion to dismiss, The Times also fails to state a claim for either contributory or vicarious infringement based on user-prompted answer engine "outputs" (Count III).  With respect to contributory liability, The Times has not plausibly alleged that Perplexity either induced its users to generate infringing outputs or tailored its services for infringement, as required under the Supreme Court's March 25, 2026 decision in *Cox Communications v. Sony Music Ent.*, 607 U.S. ___, 146 S. Ct. 959 (2026).  And with respect to vicarious liability, The Times has not plausibly alleged that Perplexity has a direct financial interest in any purported third-party infringement of Plaintiffs' works.

20.     The principal facts and legal issues in dispute include:

a.      Whether Perplexity's alleged use of The Times' asserted works at the "input" stage constitutes fair use and is therefore not infringing;

b.      Whether Perplexity engaged in the volitional conduct required for direct copyright infringement liability as to "outputs" when its fully automated answer engine system generates allegedly infringing outputs in direct response to specific user prompts;

c.      Whether The Times has sufficiently identified specific acts of infringement supporting a prima facie claim of infringement as to each asserted work;

d.      Whether the allegedly infringing outputs were generated in response to highly atypical, litigation-engineered, plaintiff-authorized prompts that are not representative of ordinary user behavior;

e.      Whether The Times can satisfy the Supreme Court's recently clarified standard for contributory infringement requiring proof that Perplexity intended its service to be used for infringement, either by inducing infringement or offering a service tailored to infringement;

f.      Whether Perplexity has the right and ability to supervise and control, and a direct financial interest in, alleged third-party infringement as required for vicarious liability;

g.      Whether Plaintiffs' asserted trademarks are distinctive and/or famous;

h.      Whether Perplexity has made any actionable use of Plaintiffs' asserted trademarks in connection with the sale or offering for sale of any goods or services;

      i.      Whether Perplexity's alleged use of Plaintiffs' asserted trademarks in output citations and source links is likely to cause dilution or consumer confusion;

      j.      Whether Perplexity's alleged use of Plaintiffs' asserted trademarks constitutes a false designation of origin;

      k.      Whether Perplexity's alleged use of Plaintiffs' asserted trademarks in output citations and source links constitutes a nonactionable fair use.

## III.  INITIAL DISCLOSURES

21.  The parties exchanged initial disclosures under Rule 26(a)(1)(A) on April 24, 2026.

## IV.  MOTION PRACTICE

### A.  PLAINTIFFS' STATEMENT

22.  Plaintiffs anticipate filing a motion for summary judgment on certain issues that may narrow the case.

### B.  DEFENDANT'S STATEMENT

23.  On April 17, 2026, Perplexity filed a motion to dismiss Counts II through V of Plaintiffs' Amended Complaint. Dkt. Nos. 57-58. Plaintiffs filed their opposition to Perplexity's motion on May 15, 2026. Perplexity's deadline to submit its reply in support of its motion to dismiss is June 9, 2026. Perplexity has not yet answered the First Amended Complaint. Other than Perplexity's motion to dismiss, there are no other pending motions.

24.  Perplexity anticipates filing a motion for summary judgment on some or all of any claims that survive Perplexity's motion to dismiss.

V.    **SCOPE OF DISCOVERY**

25.    The parties agree that discovery is governed by the Federal Rules of Civil Procedure, the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, and this Court's Individual Practices.

26.    **Plaintiffs** anticipate that discovery will be needed on at least the following subjects:

a.    Perplexity's corporate structures and financial documents, such as capitalization tables and financial projections;

b.    Perplexity's suite of retrieval-augmented generation ("RAG") products, including its consumer chatbot, referred to by Perplexity as its "answer engine," enterprise chatbot, application programming interfaces, and personal assistants, and the content, including Plaintiffs', used in connection with Perplexity products;

c.    Perplexity's use of software platforms, including its own and third parties', to obtain news and other content;

d.    Perplexity's RAG database, including how content for the database is obtained, stored, and used in response to Perplexity users' queries;

e.    Perplexity's Log Database, which includes user queries, conversation history, and session-level metadata;

f.    The development and commercialization of Perplexity's GenAI products;

g.    Output generated by Perplexity's GenAI products, including output that repeats or summarizes training material or contains hallucinations or misinformation;

10

h. Perplexity's licensing deals and negotiations, including those involving the use of content for operating Perplexity's GenAI products;

i. Business plans, product plans, and financial projections for Perplexity, including those that pertain to offering news and other content offered by Plaintiffs;

j. The presence of copyrighted content in datasets used by Perplexity in connection with its GenAI products;

k. Perplexity's knowledge of its infringing conduct, including communications about their unlicensed use of copyrighted content and efforts to disguise or otherwise cover up their use of copyrighted content belonging to Plaintiffs.

27. **Perplexity** anticipates that discovery will be needed on at least the following subjects:

a. Ownership, authorship, creation, and registration of each asserted work;

b. The allegedly infringing outputs;

c. Plaintiffs' use of Perplexity's services and other AI platforms and tools;

d. Perplexity's fair use defense;

e. Other defenses to be asserted by Perplexity;

f. Plaintiffs' licenses and any other agreements relating to the asserted works, including any agreements with AI companies;

g. Plaintiffs' revenues and projected revenues from the exploitation of each asserted work, broken down by time period and source;

h. Analyses of the existing and potential markets for Plaintiffs' asserted works;

11

i.     Ownership and registration of Plaintiffs' asserted trademarks;

j.     The validity, scope of protection and claimed fame of Plaintiffs' asserted trademarks;

k.     Any actual (or lack of) confusion among consumers related to Plaintiffs' asserted marks; and

l.     Plaintiffs' purported damages.

## VI.   **DISCOVERY ORDERS**

28.    The parties are engaged in discussions regarding a proposed protective order and a proposed order regarding the production of Electronically Stored Information (ESI).

29.    If the parties are unable to agree to one or more provisions of such orders, the parties anticipate submitting competing proposals to the Court.

### A.   **COORDINATION OF DISCOVERY**

30.    The parties agree that discovery in this action should be coordinated with discovery in the Tribune Action, No. 25-cv-10094-LAP, as follows: (a) any deposition taken by Chicago Tribune or The Times Plaintiffs of Perplexity's current or former employees or any third party may be used in either action; (b) documents produced by Perplexity concerning subjects that overlap between the two actions should be produced in both actions; and (c) both actions will be governed by a single protective order; a single ESI order, and a single deposition protocol.

31.    **Plaintiffs' Position:** Given the complexities of the claims and potential defenses in these cases, depositions of current or former Perplexity employees and third parties shall not exceed 120 hours total across both matters. Plaintiffs also request that identical documents produced in both matters bear the same Bates numbers. In the interest of efficiency, Plaintiffs also request that Perplexity promptly produce transcripts of depositions taken of Perplexity in the

*Encyclopaedia Britannica, Inc. v. Perplexity AI, Inc.*, 1:25-cv-07546 (S.D.N.Y.) and *Dow Jones & Company, Inc. v. Perplexity AI, Inc.*, 1:24-cv-07984 (S.D.N.Y.).

32.     **Defendant's Position:** Perplexity does not agree that an unspecified number of Perplexity employees and third parties should be required to be deposed by Plaintiffs for up to "120 hours total"—which would be the equivalent of more than 17 days of testimony, compared to the total of ten (10) seven-hour depositions generally provided for under Rule 30(a)(2)(A)(i). Perplexity will engage in good faith discussions with Plaintiffs regarding the numbering to be used for documents to be produced in both this action and the Tribune Action, as well regarding the production of transcripts of depositions of both Perplexity witnesses and Plaintiffs' witnesses in other actions pending in this District, including *The New York Times Co. v. Microsoft Corp.*, No. 1:23-cv-11195-SHS-OTW and *In Re: OpenAI, Inc. Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW.

### B.   DISCOVERY LIMITS

33.     **Plaintiff** anticipates that the complexities of the claims and potential defenses in these matters will require modifications of the defaults established by the Federal Rules of Civil Procedure with respect to depositions of Defendant's witnesses and third parties. As detailed in the FACs, these cases involve emerging, iterative technologies that rely on large, often complex datasets. The discovery in these matters is therefore anticipated to be voluminous and technical. Accordingly, the modifications requested are appropriate and necessary.

34.     **Defendant** does not currently anticipate that this matter will require modifications of the defaults established by the Federal Rules of Civil Procedure with respect to depositions of witnesses and third-parties except as stated in paragraph 30 above.  Plaintiffs do not identify any alleged complexities that would warrant departing from the defaults established by the Federal

Rules of Civil Procedure with respect to depositions of Defendant's witnesses and third-parties or the modifications that Plaintiffs believe will be required.

35.    The parties agree that discovery is governed by this Court's Individual Practices, as well as any applicable provisions of such orders regarding confidentiality, privilege, and ESI as the Court may enter.

## VII.    CASE SCHEDULE

36.    The parties agree that discovery opened when they held their Rule 26(f) conference on March 25, 2026.  The parties' proposed case schedule is as follows:

| Event | Deadline |
|---|---|
| Initial disclosures | April 24, 2026 |
| Earliest date to serve document requests | April 24, 2026 |
| Motion for leave to amend or join parties | June 17, 2026 |
| Earliest date to serve contention interrogatories and requests to admit | December 15, 2026 |
| Completion of fact depositions | February 26, 2027 |
| Fact discovery close | February 26, 2027 |
| Opening expert reports | April 16, 2027 |
| Rebuttal expert reports | June 9, 2027 |
| Expert discovery close | July 30, 2027 |
| Close of all discovery | July 30, 2027 |
| Summary judgment motions | September 15, 2027 |
| Oppositions to summary judgment motions | October 15, 2027 |

| Event | Deadline |
|---|---|
| Replies in support of summary judgment motions | November 8, 2027 |
| Daubert motions / motions in limine | 30 days after ruling on dispositive motions |
| Oppositions to Daubert motions / motions in limine | 21 days after motions filed |
| Replies in support of Daubert motions / motions in limine | 14 days after oppositions filed |
| Pre-trial conference | TBD |

## VIII.  DISCOVERY PRESERVATION ISSUES

37.    **Plaintiffs' Statement**: An issue has recently arisen with respect to the truthfulness of two representations Perplexity had made to this Court in the parties' January 13, 2026 letter, concerning the preservation of ESI. Dkt. 30. Specifically, Perplexity advised this Court that it had conducted two text-searchable snapshots in November 2024 and May 2025 reflecting user activity and that it was "in the process of creating this week additional copies of these datasets that will include data for the preceding six-month period, consistent with Perplexity's retention period for this data." *Id.* at 2. In a proceeding before Judge Failla, however, Perplexity represented on April 2, 2026, that it had taken only two text-searchable snapshots: one in November 2024 and one in May 2025, each capturing only three months of data—not six months, as represented to this Court. *Dow Jones & Co., Inc. v. Perplexity AI, Inc.*, 1:24-cv-07984, Dkt. 114 at ¶5. Perplexity did not take the third snapshot in January 2026 that it had represented to this Court that it would take, and each of the two snapshots it had taken contained only three months, not six months, of data.

15

38.    In *Dow Jones*, Perplexity stated that the *Dow Jones* plaintiffs' "purported understanding that more snapshots exist derives from a letter brief filed by different counsel in a different case [citing Dkt. 32, the parties' January 13 joint letter in these matters, quoted above]. ***To be clear, notwithstanding Plaintiffs' interpretation of that filing, Perplexity has created no other Log Database snapshots beyond the ones that have already been made available to Plaintiffs in this case***." *Id.* (emphasis in original).  Therefore, Perplexity's representations to this Court (1) that it intended to take a third snapshot the week following the parties' January 13 letter; and (2) that each snapshot captured six months of data, were incorrect.

39.    Notwithstanding the misrepresentations made by Perplexity to this Court on January 13, 2026 (Dkt. 30), Perplexity has confirmed the accuracy of the following six understandings: (1) Perplexity has preserved the data in its user activity log database since the inception of the product; (2) Perplexity has preserved the data in the RAG database since the inception of the product; (3) Perplexity has created text-searchable and exportable snapshots of its user activity logs from six distinct months: September 2024, October 2024, November 2024, March 2025, April 2025, and May 2025; (4) there was no loss of data that would have otherwise been captured by the three snapshots Perplexity had originally stated it would take, and the data is in searchable and exportable format; (5) Perplexity will continue to preserve the data identified by items 1, 2, and 3; and (6) in addition to the snapshots for the months identified in item 3, Perplexity has the ability to create additional exportable text-searchable snapshots for additional months.

40.    **Defendant's Statement:**  Plaintiffs' assertions regarding their discussions with Perplexity regarding document preservation are incomplete and incorrect.  Perplexity's statements reflected in Plaintiffs' January 13, 2026, letter to the Court to the effect that Perplexity is "taking the steps necessary to preserve documents and ESI potentially relevant to this litigation" remains

correct.  Dkt. No. 32 at 1-2.  Plaintiffs' assertions regarding database "snapshots" produced in an unrelated litigation do not change this—nor do Plaintiffs contend otherwise.  In the January 13, 2026 letter to the Court—which was provided pursuant to the Court's directive that the parties confer regarding preservation and update the Court on that subject within a week—Plaintiffs' counsel reported that Perplexity had previously created two "archival copies of datasets reflecting user activity and the content stored in its [RAG] index database,[2] *id.* at 2, and that Perplexity was "in the process of creating this week additional copies of these datasets that will include data for the preceding six month period, consistent with Perplexity's retention period for this data." *Id.*

41.     The two archival copies, or "snapshots," that Perplexity previously created are a subset of, and should be considered separately from, its preservation efforts more generally. Perplexity created those two snapshots for the *Dow Jones* case as a means of creating datasets for a period of months that were text searchable and usable in that litigation.  As Plaintiffs' January 13, 2026, letter explained, however, these "copies are in addition to vast amounts of user activity and RAG index data kept by Perplexity in the normal course of its operations." *Id.*

42.     Perplexity has in fact (1) preserved the data in the user activity log database since its inception and (2) preserved the data in the RAG database since its inception, with the exception of data that was contained in the RAG database in the past but has since been removed from its prior source and is thus no longer available on the Internet (e.g., if a website's owner removed content from, or corrected content on, its website, the removed or corrected content would no longer appear in Perplexity's RAG database).  To the extent the January 13, 2026 letter mistakenly suggested that each of the two prior snapshots covered a six-month period, that error was

---

[2]  The Court subsequently granted Perplexity's request for a one-day extension by email on January 12, 2026.

inadvertent and Perplexity apologizes for any resulting confusion.  Taken together, the two snapshots (which cover approximately three months each) include data from six distinct months: the "November 2024 snapshot" includes data taken from September, October, and November 2024, and the "May 2025 snapshot" includes data from March, April, and May 2025. Notwithstanding the January 13, 2026 letter's reference to the creation of an additional snapshot that would cover "the preceding six month period, consistent with Perplexity's retention period for this data," Perplexity has not yet created an additional text-searchable "snapshot" like those created in the *Dow Jones* case.  All such data has been preserved since the inception of the respective databases as explained above, however, and further text-searchable snapshots can be created for use in this case if necessary, subject to burden and proportionality considerations.

43.    A third text-searchable snapshot was not created in January due to a misunderstanding in connection with Perplexity's adoption of a new storage system around that time.  In the process of Perplexity migrating its data to the new storage system, where it would all continue to be preserved, there was a misunderstanding regarding the need to create a third snapshot similar to the two created in connection with the *Dow Jones* case, as opposed to retaining the data that would be subject to such a snapshot.  While Perplexity apologizes for this confusion, a text-searchable snapshot can nonetheless still be created, subject to a determination that it is reasonably proportional to the needs of the case in the context of Plaintiffs' claims and discovery requests, and Perplexity remains willing to work with Plaintiffs regarding the parameters for and the costs of preparing any such additional snapshot if requested.

Dated: May 26, 2026

**ROTHWELL, FIGG, ERNST & MANBECK, P.C.**

*/s/ Steven Lieberman*
Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker (*pro hac vice forthcoming*)
Jenny L. Colgate (*pro hac vice forthcoming*)
Alexandra Hughes (*admitted pro hac vice*)
Kristen J. Logan (*pro hac vice forthcoming*)
Bryan B. Thompson (6004147)
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
ahughes@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com

*Counsel for Plaintiffs The New York Times Company, Wirecutter, Inc. and The Athletic Media Company*

Dated: May 26, 2026

**KING & SPALDING LLP**

*/s/ Bruce W. Baber*
Bruce W. Baber (*admitted pro hac vice*)
1180 Peachtree Street, NE
Suite 1600
Atlanta, Georgia 30309
Telephone: 404-572-4600
bbaber@kslaw.com

Kathleen E. McCarthy
Jackie Fugitt
1290 Avenue of the Americas, 14th Floor
New York, New York 10104
Telephone: 212-556-2100
kmccarthy@kslaw.com
jfugitt@kslaw.com

Neal Chatterjee (*admitted pro hac vice*)
245 Lytton Avenue, Suite 150
Palo Alto, California 94301
Telephone: 650-422-6700
nchatterjee@kslaw.com

*Counsel for Defendant Perplexity AI, Inc.*