LATHAM & WATKINS LLP

King & Spalding

November 6, 2026

Hon. Loretta A. Preska
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re: *Chicago Tribune Co., LLC v. Perplexity AI, Inc.*, No. 1:25-cv-10094;
*New York Times Co. v. Perplexity AI, Inc.*, No. 1:25-cv-10106

Dear Judge Preska,

Plaintiffs' request for an informal conference ("Motion," *Tribune* ECF 73, *Times* ECF 89) mischaracterizes the Parties' cost negotiations—raising moot or unripe issues—and seeks training data irrelevant to any of Plaintiffs' claims. Plaintiffs' request for leave to file a motion to compel should therefore be denied.

***User Activity Log ("UAL") Snapshot Costs***

There is no ripe cost dispute, other than ongoing negotiations related to the Data Inspection Protocol. For background, the Parties have discussed inspection of three UAL snapshots: (1) the May 2024 to May 2025 snapshot made available in *Dow Jones* and later in *Britannica* (the "*Dow Jones* snapshot"); (2) the August 2025 to January 2026 snapshot being created for *Britannica* (the "*Britannica* snapshot"); and (3) a February 2026 to September 2026 snapshot that Plaintiffs requested in this case but is not agreed to and has never been made available in any other case. Plaintiffs' Motion concerns only the *Dow Jones* and *Britannica* snapshots. Mot. n.1.

Perplexity never "refused to produce" the *Dow Jones* and *Britannica* snapshots. Nor is it conditioning inspection of them on Plaintiffs paying hosting costs. In fact, Perplexity is not asking Plaintiffs to pay ***any*** hosting costs for them—only for any new, additional snapshot. *See generally* Ex. D (*Tribune* ECF 73-4, *Times* ECF 89-4). The vast majority of Plaintiffs' cost-shifting argument is thus moot.

What remains is Perplexity's modest request that Plaintiffs pay for the incidental costs of their own inspections—software tools, services, and computing resources for data queries, plus half the cost of printing. This request is reasonable: the *Dow Jones* and *Britannica* plaintiffs agreed to this exact arrangement, which is more than fair given the tremendous costs that Perplexity has incurred and will incur to prepare and make this data available for inspection. *See Dow Jones v. Perplexity*, No. 1:24-cv-07984-KPF, ECF 98 ¶ 18; *Britannica v. Perplexity*, No. 1:25-cv-07546-JLR-SLC, ECF 76 ¶ 18. The Parties are still negotiating the inspection protocol, but in every exchanged draft (including Plaintiffs' latest draft from October 28), Plaintiffs ***agreed*** to cover the cost of software tools, services, and computing resources for data queries. The only cost still in dispute is printing, and court intervention on the Parties' ongoing negotiations is premature.

***Training Discovery***

Plaintiffs bear the burden to demonstrate that training discovery is "relevant to [a] party's claim or defense and proportional to the needs of the case." *New York Times Co. v. Microsoft Corp.*, 757 F. Supp. 3d 594, 597 (S.D.N.Y. 2024). Plaintiffs cannot demonstrate either. This is not a "training" case, and any marginal relevance of discovery regarding "training, post-training, and fine-tuning" of LLM models is vastly outweighed by the undue burden of collecting and producing it.

Plaintiffs may not "take discovery on any tangentially related potential claims before deciding whether to actually assert them." *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *3 (S.D.N.Y. May 23, 2016). The operative complaints assert numerous claims, but never allege that Perplexity used Plaintiffs' works to train, post-train, or fine-tune any LLM. Both of Plaintiffs' copyright infringement theories are "tightly focused" on Perplexity's RAG technology, *see NYT*, 757 F. Supp. 3d at 597, which is distinct from the training of LLM models Perplexity uses. Plaintiffs' first theory alleges copying "as inputs into database(s) or index(es)" used for "retrieval-augmented generation or RAG." *Tribune* FAC ¶¶ 93-94; *Times* FAC ¶¶ 128-129; *see also Tribune* FAC ¶¶ 52-54; *Times* FAC ¶¶ 74-76 (alleging Perplexity crawls Plaintiffs' content to "populate" a search index and feeds content "in real-time" to Perplexity's products). The second theory alleges "verbatim reproductions" flowing from Perplexity's "use of this content as input in [its] RAG process." *Tribune* FAC ¶¶ 59, 64; *Times* FAC ¶¶ 82, 87. Plaintiffs vaguely assert that "[t]raining discovery bears on both" theories, Mot. 3, but neither pleaded theory mentions, let alone depends on, training. That should be dispositive.

But even if training discovery bore on Plaintiffs' output claim, that claim is subject to Perplexity's pending motion to dismiss, and tangential but extensive discovery on it is unwarranted while that motion is pending.

The four passing allegations Plaintiffs cite do not say otherwise. Mot. 3 (citing *Tribune* FAC ¶¶ 40, 52, 59, 66). None alleges Perplexity obtained Plaintiffs' content ***for LLM training*** or that any output reproduces content that an LLM model ingested during training. At most, Plaintiffs allege that Perplexity fine-tuned open-source models to "optimize for RAG," including to "brows[e] news" to "enhance answer factuality." That is not an allegation that Perplexity fine-tuned a model ***on Plaintiffs' content***.

Plaintiffs' cases are inapt. Two applied the pre-2015 Rule 26 standard, which permitted discovery "relevant to the *subject matter*" of a case. *See A.I.A. Holdings S.A. v. Lehman Bros.*, 2000 WL 763848, at *2 (S.D.N.Y. June 12, 2000); *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 244 F.R.D. 271, 273 (S.D.N.Y. 2007). And both *Bridgeport* and *Jose Luis Pelaez, Inc. v. Scholastic Inc.* allowed discovery only into a "mode of use" that was pleaded. 2017 WL 4776993, at *4-5 (S.D.N.Y. Oct. 19, 2017) (reproduction of plaintiff's photographs in defendants' publications); *Bridgeport*, 244 F.R.D. at 273 ("streaming" was "within the ambit of" complaint). Plaintiffs, in contrast, seek broad discovery into a training process they do not allege infringes their works—a fishing expedition for an unpleaded theory. *Lifeguard*, 2016 WL 3144049, at *3.

Even if the discovery sought had some relevance to an asserted claim (it does not), the discovery is disproportionate and burdensome—a point Plaintiffs ignore. Notably, the *Dow Jones* and *Britannica* plaintiffs never sought such discovery. Nor is such discovery necessary to prove any pleaded claim: Perplexity has agreed to produce multiple snapshots of its RAG database, make available over 18 months of UAL data, and produce documents concerning its use of web crawlers, bots, spiders, user agents, and related tools to access Plaintiffs' content. Ex. F (*Tribune* ECF 73-6, *Times* ECF 89-6) at 3-4, 9-10. Requiring Perplexity to also produce ***all*** LLM training data, plus every training curriculum, epoch, model card, and related RLHF material, *see* Ex. 1, risks massively expanding discovery while imposing a burden that far outweighs any conceivable benefit. If the Court orders full briefing on Plaintiffs' motion (which is not warranted), Perplexity will submit a declaration substantiating the lack of relevance and undue burden to aid the Court in connection with these issues.

Respectfully submitted,

*/s/ Joseph R. Wetzel*
Joseph R. Wetzel
LATHAM & WATKINS LLP
Counsel for Perplexity,
No. 1:25-cv-10094-LAP

*/s/Bruce W. Baber*
Bruce W. Baber[1] (*pro hac vice*)
KING & SPALDING LLP
Counsel for Perplexity,
No. 1:25-cv-10106-LAP

cc: All Counsel of Record (via CM/ECF)

[1] Perplexity uses electronic signatures with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions.